915 A.2d 1099

BARBARA J. RENTE AND LOUIS RENTE, PLAINTIFFS–
RESPONDENTS, v. ROSEANN V. RENTE,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 17, 2007—Decided February 15, 2007.

488

Before Judges COBURN, AXELRAD and GILROY.

*Struble, Ragno, Petrie & Cotroneo,* attorneys for appellant (*Ronda Casson Cotroneo,* on the brief).

*Festa & Ingenito,* attorneys for respondents (*Peter L. Festa,* on the brief).

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

Defendant Roseann Rente, the mother of now three-and-one-half-year-old Joseph, appeals from an order of the Family Part entered on October 7, 2005, granting plaintiffs Barbara and Louis Rente, the paternal grandparents, visitation of Joseph. Defendant also appeals from the order of December 16, 2005, denying her motion for reconsideration and consolidation of the grandparent

visitation action with defendant's then-pending divorce proceeding with plaintiffs' son Daniel.

Defendant asserts the following arguments on appeal:

*POINT I*

THE PLAINTIFFS FAILED TO MAKE ANY EFFORTS TO RESOLVE THEIR DIFFERENCES WITH THE DEFENDANT BEFORE FILING SUIT.

*POINT II*

THE PLAINTIFFS FAILED TO ESTABLISH A RELATIONSHIP WITH THE CHILD AND THEREFORE DO NOT COME UNDER THE GVS.

*POINTS III, IV & V*

THE TRIAL JUDGE ERRED IN GRANTING UNSUPERVISED VISITATION TO PLAINTIFFS OVER THE MOTHER'S OBJECTION BECAUSE THEY WERE UNABLE TO DEMONSTRATE BY A PREPONDERANCE OF THE EVIDENCE THAT THE CHILD WOULD SUFFER ANY HARM IF VISITATION WAS DENIED.

*POINT VI*

FACTOR NUMBER EIGHT OF THE NEW JERSEY STATUTE CONTRAVENES THE LOGIC OF *TROXEL* AND IS UNCONSTITUTIONAL.

*POINT VII*

THE TRIAL JUDGE ERRED BY FAILING TO CONSOLIDATE THE DIVORCE PROCEEDING WITH THE GRANDPARENTS VISITATION PROCEEDING.

We reverse.

Joseph was born on July 18, 2003. Defendant and Daniel separated in March 2005 when she obtained a final restraining order (FRO) against him, and he moved in with his parents. The FRO provided for Daniel to have supervised visitation with Joseph at a court facility. Daniel filed a complaint for divorce on April 25, 2005. The final judgment of divorce was entered on April 5, 2006, and pursuant to the property settlement agreement, defendant has temporary sole legal and physical custody, and Daniel has supervised visitation on alternate weekends, monitored by plaintiffs.

On April 11, 2005, plaintiffs'[1] action was filed under the Grandparent Visitation Statute (GVS), *N.J.S.A.* 9:2–7.1. The grandmoth-

---

[1] The grandmother Barbara filed the initial application and grandfather Louis was joined as a plaintiff by the trial judge after the initial hearing.

er's certification requested that she be able to "set up some Saturdays and maybe some other times to be with Joseph." Her stated basis for a relationship with the then almost two-year-old child was that she babysat while defendant was at work. On June 15, 2005, the Family Part judge conducted a trial, in which the parties appeared pro se. Daniel did not appear. The grandmother testified she babysat for Joseph "on occasion" when defendant was at work or sick and when defendant's mother was not available to take care of him, which was about twenty-five times the prior year. She further estimated she babysat for her grandson about four times in January 2005, none in February and about eight to ten times in March. The grandmother provided the following testimony as to their relationship:

> Joseph and I have a very good relationship. When he's at my house, we have dinner ... [a]nd then after dinner ... I always have books for him that we read. Then he has trucks and toys and cars and some videos that have like songs on them and little games that you play with the alphabet.

Louis' sole comment about his relationship with Joseph was "I'm his grandfather" and "We spend time with him ... when [defendant] drops him off ... when she has to go to work."

Defendant disputed the frequency of the occasions that plaintiffs babysat, testifying that her mother was Joseph's primary babysitter when she was at work. She estimated that plaintiffs had only seen Joseph about five times between January and June 2005. It was undisputed that plaintiffs had not seen Joseph since March 28, 2005. Defendant claimed the child "doesn't even know" his grandmother and claimed she was shocked by the GVS application because the grandmother "was never concerned about [Joseph and s]he would go for three months at a time not seeing him." Defendant further claimed the grandparents did not know how to properly care for Joseph, complaining that when they babysat in the past he suffered severe diaper rashes because of their failure to change his diapers and foot blisters because they would not remove his shoes at any time during the day. Despite the problems, defendant stated she did not want to terminate Joseph's

relationship with his grandparents and she would be amenable to supervised visitation, possibly once a month.

Although the judge stated he did not have proof before him that any harm would come to the child by not visiting with the grandparents, which he recognized was the standard under the GVS, he then entered an interim order for weekly supervised visitation and appointed Dr. Dasher to perform a psychological evaluation. It appears from the colloquy the judge ordered supervised visitation because the mother had acquiesced, although it is clear that defendant objected to the weekly visitation ordered by the court.

By the continuation hearing of October 7, 2005, plaintiffs were supervising their son's visitation with Joseph two hours on Wednesday nights. At the hearing, the judge read Dr. Dasher's report into the record, in which he opined:

> It is my impression that both natural parents have significant adjustment problems that impair their parenting ability, which in my opinion, underscores the need for grandparent contact, because Barbara and Louis Rente, in my opinion, represent the only stable influence in Joseph's life at this time.

The judge further referenced portions of the report in which Dr. Dasher stated that there was no substantive evidence to suggest the paternal grandparents presented any risk to Joseph and recommended they be granted unsupervised visitation every other weekend. Over defendant's objection, the judge admitted Dr. Dasher's report into evidence. Based on this report, which the judge found to be "quite comprehensive," the judge concluded it "would harm [Joseph] to have this stability [of the grandparents] removed ... from his life at the present time," and granted unsupervised grandparent visitation on alternate weekends by order of October 7, 2005. By order of December 16, 2005, the judge denied defendant's motion for reconsideration and consolidation of the GVS with the pending divorce proceeding. Thus, as represented in defendant's brief, plaintiffs currently supervise their son's visitation with Joseph on alternate weekends pursuant to the matrimonial order, and have independent visitation with Joseph on the remaining two weekends pursuant to the GVS

order, resulting in defendant having virtually no weekend time with Joseph.

Because the GVS is an incursion on a fundamental right of the parent, our Supreme Court has held that "the only state interest warranting the invocation of the State's *parens patriae* jurisdiction to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child." *Moriarty v. Bradt*, 177 *N.J.* 84, 114–15, 827 *A.*2d 203 (2003). In *Moriarty* the Court held that grandparents will only be given visitation against the wishes of a parent if they can prove by a preponderance of the evidence that such visitation is necessary to avoid harm to the child. *Id.* at 117, 827 *A.*2d 203. In *Mizrahi v. Cannon*, 375 *N.J.Super.* 221, 867 *A.*2d 490 (App.Div.2005), we reversed the award of grandparent visitation, holding that in the wake of *Moriarty*,

> [grandparents] must establish that denying visitation would wreak a particular identifiable harm, specific to the child, to justify interference with a parent's fundamental due process right to raise a child free from judicial interference and supervision. Conclusory, generic items, such as "loss of potentially happy memories," are not a sufficient basis to warrant such an intrusion into a parent's decision making.
> [*Id.* at 234, 867 *A.*2d 490.]

The harm can be demonstrated by factual or expert evidence. *Moriarty, supra,* 177 *N.J.* at 117, 827 *A.*2d 203. Such testimony can include evidence of a longstanding relationship between the grandparents and the child, with expert testimony assessing the effect of the termination of such relationship. *Ibid.* (citations omitted). Moreover, the trial court has the discretion to appoint a medical expert if it believes the expert will assist it in disposing of an issue in dispute. *R.* 5:3–3(a). The expert's report must be submitted to the court and parties, and the parties are entitled a reasonable opportunity to conduct discovery of the expert. *R.* 5:3–3(f). Moreover, the court-appointed expert is subject to cross-examination. *R.* 5:3–3(g).

Only after the court finds the potential for harm has been shown and the presumption in favor of parental decision-

making has been overcome, should the court review and approve a visitation schedule that it determines is in the child's best interest, based on the applicable statutory factors. *See N.J.S.A.* 9:2–7.1b (listing statutory factors); *Moriarty, supra,* 177 *N.J.* at 117, 827 *A.*2d 203. And when visitation is not denied outright but the grandparents challenge the sufficiency of the proffered schedule, the same standard is applied. *Moriarty, supra,* 177 *N.J.* at 118, 827 *A.*2d 203. They are required to prove that visitation is necessary and the schedule offered by the parent is inadequate to avoid harm to the child. *Ibid.* Again, only after the court determines the grandparents' proofs are sufficient to overcome the presumption in favor of parental decision-making, should it proceed to the next step and direct a visitation schedule that is in the child's best interests based on the statutory factors. *Ibid.*

■ Here, the judge recognized the high burden of proof necessary for a grandparent to obtain visitation over the objection of a parent. He acknowledged at the conclusion of the June hearing that he did not have the proof before him that any harm would come to Joseph by not visiting with plaintiffs. He made no finding that plaintiffs had proven that visitation was necessary and the monthly supervised schedule offered by defendant was inadequate to avoid harm to Joseph. Regardless, the judge ordered that the grandparents be given weekly supervised visitations, over the strenuous objection of the mother, pending psychological evaluations of both parents and bonding evaluations of the grandparents and Joseph, and continued the case for four months. We perceive this as error. The grandmother's testimony of babysitting for her two-year-old grandson on occasion failed to establish even a prima facie case of the requisite harm under *Moriarty* to rebut the presumption in favor of parental decision-making that would necessitate a psychological evaluation and hearing. In light of defendant's willingness to allow the grandparents to have visitation, though limited in time and scope, which was well within ' defendant's prerogative as the toddler's mother, the court should

have dismissed the plaintiffs' GVS petition at the conclusion of the trial based on failure to satisfy their burden of proof.

Even assuming plaintiffs had established a prima facie case or the court felt the need to appoint an expert and schedule another hearing because of the parties' pro se status, there were procedural and substantive deficiencies that require reversal of the GVS order. At the October hearing, the trial judge failed to comply with *Rule* 5:3–3, when he admitted Dr. Dasher's report into evidence without offering defendant an opportunity to obtain her own expert, providing a copy to defendant to review prior to the hearing and permitting her a reasonable opportunity to depose Dr. Dasher, or making Dr. Dasher available for cross-examination. *R.* 5:3–3(e)(f)(g)(h).

Moreover, Dr. Dasher's report was insufficient to establish the requisite harm to the child under *Moriarty*. It was clear Dr. Dasher was less than impressed with defendant's and Daniel's parenting abilities and, essentially based on that assumption, articulated the net opinion that the grandparents represented the only stable influence in Joseph's life. The psychologist had limited contact with the parties and provided no examples of such stability to support his opinion. He further opined there was "no substantial evidence to suggest that the paternal grandparents present any risk" to Joseph. The standard for grandparent visitation, however, is not a "best interests" test. Rather, the burden is on the grandparents to demonstrate, by a preponderance of the evidence, that the child would be harmed in the absence of visitation. *Moriarty, supra,* 177 *N.J.* at 117, 827 *A.*2d 203. Dr. Dasher's report failed to articulate any particular harm that would result from the denial of plaintiffs' visitation rights with their grandson or indicate that any restriction of plaintiffs' rights beyond the once-monthly supervised visitation scheduled proffered by defendant was inadequate to avoid harm to Joseph. Dr. Dasher's recommendation of unsupervised weekly visitation was immaterial to the issue before the court.

Thus, without legal basis, the Family Part judge implemented a grandparent visitation schedule that was contrary to the express wishes of the child's mother in terms of supervision and extensive time commitment. The end result is that the grandparents, whose relationship consisted of babysitting on occasion for Joseph, who was then two years old, now have visitation four weekends per month, two as supervisors for their son, and two independently under the GVS, while the mother, who has sole custody of the child, only gets to spend the occasional fifth weekend a month with him. This result is clearly inconsistent with the intent and spirit of the GVS.

As plaintiffs failed to satisfy their burden of proof under *Moriarty*, we reverse the October 7, 2005 grandparent visitation order. We therefore need not address the other issues raised in defendant's brief. Nothing in this opinion precludes defendant from consenting to grandparent visitation under terms and conditions she deems appropriate or precludes plaintiffs from filing a subsequent application for visitation under the GVS if the circumstances materially change.

Reversed.