SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## Anthony C. Major v. Julie Maguire  (A-110-13) (074345)

**Argued September 17, 2015 – Decided January 12, 2016**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court addresses the procedure for case management and for determining whether a grandparent, seeking an order compelling visitation under the Grandparent Visitation Statute, has made a prima facie showing of harm to the child sufficient to withstand a motion to dismiss.

Plaintiffs' granddaughter was born in 2007. Her parents, Anthony Major and defendant Julie Maguire, separated in December 2009 after Major was diagnosed with cancer. Thereafter, they had joint legal custody of the child. Prior to her son's separation from defendant, plaintiff Suzanne Major visited her granddaughter approximately once every two weeks; thereafter, she visited the child at her son's home every weekend, and took her on trips and vacations. Her contact with the child increased in frequency as Major's health declined. Plaintiff's husband also visited the child, and often cared for her while Major was undergoing medical treatment. Following Major's death on February 21, 2013, plaintiffs asserted that Maguire had permitted them to see their granddaughter only twice in four months, for a brief visit at a skating rink and for five minutes after a dance recital.

Plaintiffs commenced this action for an order compelling visitation under the Grandparent Visitation Statute, N.J.S.A. 9:2-7.1. At an initial hearing, defendant's counsel argued that plaintiffs had failed to establish a prima facie showing of harm to the child in the absence of visitation, and informally moved for dismissal of the complaint with prejudice. The trial court stated that the complaint failed to make the necessary showing of harm. The court permitted plaintiffs to supplement the complaint with their testimony, but did not allow expert testimony on the issue of harm. The evidence that plaintiffs presented expressed their view that their granddaughter would suffer harm if deprived of a continued relationship with them. The trial court held that the complaint, as amended by plaintiffs' testimony, failed to demonstrate a particularized harm to the child in the absence of grandparent visitation. The court further found the complaint to be premature because there was no showing that the defendant had denied visitation with finality after efforts to resolve the matter. The court dismissed the complaint.

The Appellate Division reversed. The panel invoked the procedural guidelines set forth in R.K. v. D.L., 434 N.J. Super. 113 (App. Div. 2014), and concluded that the trial court's approach was inconsistent with governing statutory and case law. The panel remanded to the trial court with directions to re-examine the complaint under R.K. This Court granted certification. 218 N.J. 530 (2015).

**HELD:** Plaintiffs, who commenced an action under the statute, alleged in detail their involvement in their granddaughter's life from birth and contended that their alienation from the child will cause her harm. Based on these allegations, plaintiffs established a prima facie showing of harm to the child at the pleading stage, as required by Moriarty v. Bradt, 177 N.J. 84 (2003), cert. denied, 540 U.S. 1177 (2004). The trial court should have denied defendant's motion to dismiss and given plaintiffs the opportunity to satisfy their burden of proving harm. Procedural guidelines are now established for proceedings under the statute.

1. In light of the infringement on the fundamental right to parental autonomy effected by the statute, this Court recognized in Moriarty that the statute is subject to strict scrutiny, and that the need to avoid harm to the child is the only state interest warranting grandparent visitation over the wishes of a fit parent. This Court therefore augmented the statutory best-interests benchmark with a threshold determination of harm, requiring the grandparents to establish, by a preponderance of the evidence, that visitation is necessary to avoid harm to the child. Absent a showing of harm, a trial court may not mandate visitation pursuant to the best-interests factors. (pp. 12-20)

2. The Court establishes the following principles for addressing procedural matters in actions under the statute,

1

which are patterned after the procedure set forth in R.K., and which require a fact-sensitive analysis:

(a) The limitations imposed in summary actions may deprive a litigant of an opportunity to meet his or her burden under the statute and case law; however, the case management procedures of R.K. may impose burdens on the privacy and resources of a family, and are neither necessary nor appropriate in every case. Accordingly, the approach to case management reflected in Rule 5:5-7(c) strikes the appropriate balance. Case management conferences and the other proceedings referenced in the Rule are appropriate only in cases that warrant assignment to the complex track. For such actions, the case management recommendations in R.K. provide a practical template. Applications that are not complex may be handled as summary actions, with or without case management and discovery as authorized by Rule 5:4-4(a). (pp. 24-27)

(b) When a party requests that the matter be designated as complex, plaintiff should ordinarily file a non-conforming complaint, as permitted by Rule 5:4-2(i), to supplement the form pleading required by Directive 08-11. Plaintiffs will thereby have the opportunity to present a prima facie showing of harm and address the factors stated in the statute without the constraints of a limited form pleading. A parent opposing visitation should use his or her responsive pleading to identify issues on which the parties agree and counter the grandparents' allegations on disputed issues. Informed by the pleadings, the trial court can make a considered judgment about the complexity of the matter, the need for fact or expert discovery, and the issues to be resolved. (pp. 27-28)

(c) If fact discovery is required, the court and the parties should coordinate and streamline the process, and any discovery should be circumscribed to prevent or minimize intrusion on the privacy of the child and the family. Similarly, when a plaintiff seeks to present expert testimony to meet his or her burden, trial courts should be sensitive to the impact of involvement of an expert on family resources, protective of the privacy of the child, and mindful of an expert's potential value to the court and the parties in suggesting a resolution of the dispute. (pp. 28-30)

(d) The trial court should not hesitate to dismiss an action without a full trial if the grandparents cannot sustain their burden to make the required showing of harm. Trial courts should encourage parties to mediate or arbitrate grandparent visitation actions in accordance with New Jersey's strong policy in favor of alternative dispute resolution. (p. 30)

3. Applying these principles, the trial court erred when it dismissed the complaint. Plaintiffs' pleadings satisfy the requirements of Moriarty for a prima facie showing of harm to the child because: (1) plaintiffs demonstrated that their granddaughter enjoyed a close relationship with her father, who shared custody with her mother, and contended that his death caused a major trauma in her life; and (2) plaintiffs presented evidence that they had maintained a close bond with their granddaughter prior to her father's death, and assumed significant responsibility for her care during her father's parenting time. The recent death of the child's father, in concert with plaintiffs' allegation that the child was deprived of the consistent presence of her grandmother, gave rise to a prima facie showing of harm. The frequency and nature of the grandfather's contacts with the child also satisfied his burden of establishing a prima facie showing of harm at the pleadings stage. (pp. 31-34)

4. While all parties should make efforts to resolve grandparent visitation issues without resort to litigation, there is no requirement that visitation be denied with finality before grandparents threaten or institute litigation. The trial court's rejection of plaintiffs' complaint as premature was therefore improper. (pp. 34-35)

5. On remand, the trial court need not re-examine the complaint to determine whether plaintiffs have established a prima facie showing of harm to the child. The trial court should permit the matter to proceed beyond the pleading stage, and it should be managed as a complex matter. (pp. 35-36)

The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**, and the matter is **REMANDED** to the trial court.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON'S opinion. JUSTICES ALBIN and FERNANDEZ-VINA did not participate.**

ANTHONY C. MAJOR and
SUZANNE MAJOR,

     Plaintiffs-Respondents,

        v.

JULIE MAGUIRE n/k/a
JULIE DI LIBERTO,

     Defendant-Appellant.


     Argued September 17, 2015 – Decided January 12, 2016

     On certification to the Superior Court,
     Appellate Division.

     Theresa A. Lyons argued the cause for
     appellant (Lyons & Associates, attorneys;
     Ms. Lyons and Kristyl M. Berckes, on the
     briefs).

     Laurie L. Newmark argued the cause for
     respondents (Townsend, Tomaio & Newmark,
     attorneys; John E. Clancy, on the briefs).

     Brian G. Paul argued the cause on behalf of
     amicus curiae New Jersey State Bar
     Association (Miles S. Winder III, President,
     attorney; Paris P. Eliades, of counsel; Mr.
     Paul, Mr. Eliades, Jeralyn L. Lawrence, and
     Cheryl E. Connors, on the brief).

   JUSTICE PATTERSON delivered the opinion of the Court.

   In Moriarty v. Bradt, 177 N.J. 84 (2003), cert. denied, 540

U.S. 1177, 124 S. Ct. 1408, 158 L. Ed. 2d 78 (2004), the Court

addressed the standard that grandparents must meet to secure an

1

order compelling visitation pursuant to the Grandparent Visitation Statute, N.J.S.A. 9:2-7.1. The Court reasoned that because a judicial order compelling grandparent visitation infringes on parents' fundamental right to raise their children as they see fit, N.J.S.A. 9:2-7.1 is subject to strict scrutiny. Id. at 117-18. The Court determined that the statute could survive a constitutional challenge only if a "threshold harm standard" augmented the "best interests of the child" factors prescribed by the Legislature. Ibid. It ruled that when the child's parent or parents object to the proposed visitation, the grandparent seeking such visitation must prove by a preponderance of the evidence that denial of his or her application would result in harm to the child. Ibid. It further held that if the grandparent meets that burden, the presumption in favor of parental decision-making is overcome, and the court sets a visitation schedule in the best interests of the child. Ibid.

In this appeal, the Court addresses the procedures by which a Family Part judge determines whether a grandparent has made a prima facie showing of harm to the child sufficient to withstand a motion to dismiss, and manages the case if it continues beyond the pleading stage. Those issues arose in the context of a request by plaintiffs Anthony C. Major and Suzanne Major for visitation with their young granddaughter following the death of

2

their son.  Defendant Julie Maguire, the child's mother, allowed the grandparents only two brief visits with their granddaughter after their son died.

Plaintiffs filed an action under N.J.S.A. 9:2-7.1 in the Family Part, seeking an order compelling defendant to allow them periodic visits with their granddaughter.  The trial court determined that in their complaint, supplemented by their testimony, plaintiffs failed to present a prima facie showing that the child would be harmed unless visitation were ordered. It found that plaintiffs had improperly instituted litigation before defendant had denied visitation with finality, and dismissed the complaint.  Relying on its decision addressing case management issues in grandparent visitation litigation in R.K. v. D.L., 434 N.J. Super. 113 (App. Div. 2014), the Appellate Division reversed the trial court's determination and remanded for the trial court's reevaluation of the sufficiency of plaintiffs' complaint.

We reaffirm the holding of Moriarty that, in order to overcome the presumption of parental autonomy in the raising of children, grandparents who bring visitation actions under N.J.S.A. 9:2-7.1 must prove by a preponderance of the evidence that denial of visitation will harm the child.  This case, however, arises not from a court's findings on a full record, but the grant of a motion to dismiss under Rule 4:6-2(e) at the

3

pleading stage, in which plaintiffs must be afforded every reasonable inference of fact. Here, plaintiffs alleged in detail their involvement in their granddaughter's life prior to the death of their son and contended on that basis that their alienation from the child caused her harm. The trial court should have denied defendant's motion to dismiss and given plaintiffs the opportunity to satisfy their burden to prove harm.

Accordingly, we modify and affirm the judgment of the Appellate Division and remand to the trial court for further proceedings.

I.

The child at the center of this case was born in 2007. Her parents, Anthony C. "Chris" Major and defendant, cohabited between early 2007 and late 2009. Plaintiff Suzanne Major, the mother of Chris Major, contends that during the period in which her son and defendant lived together, she visited her granddaughter approximately once every two weeks. Plaintiff Anthony Major, who was divorced from plaintiff Suzanne Major in 1997, is Chris Major's father. The record does not reveal the extent to which plaintiff Anthony Major maintained a relationship with his granddaughter during the first two years of her life.

4

In August 2009, Chris Major was diagnosed with cancer. Four months later, he and defendant separated, and he moved from the residence that he had shared with defendant and their daughter.

In February 2010, defendant and Chris Major entered into an agreement regarding the custody of their daughter. Under the terms of that agreement, the parents had joint legal custody, and the child spent about half of her time with each parent. Defendant was designated as the parent of primary residence, and Chris Major was the parent of alternate residence. Although a dispute between defendant and Chris Major relating to "parenting time and extracurricular activities" required court intervention in late 2011, that dispute was resolved, and the parents entered into a modified custody agreement that maintained their shared parenting arrangement.

Plaintiff Suzanne Major contends that, following her son's separation from defendant, she frequently spent time with her granddaughter. She asserted before the trial court that she visited the child at her son's home every weekend, that the child visited her home about once a month, that she attended dance recitals, and that she brought the child to "take your child to work day" annually for three consecutive years. She testified that she, her son, and her granddaughter took annual trips to Disney World, that they also travelled to Key West,

5

Florida, and New York City in 2012, and that her granddaughter stayed at her vacation home in Maine.

According to his testimony before the trial court, following his son's separation from defendant, plaintiff Anthony Major visited his granddaughter approximately once every two weeks, often caring for her while her father underwent cancer treatment.  He stated that he purchased a boat in 2011, and that in the two years that followed, he took his granddaughter on frequent fishing trips.

According to plaintiffs, in September 2012, Chris Major's health declined, and plaintiff Suzanne Major assumed greater responsibilities in her son's home.  She testified that she took time off from work to assist her son, stayed at his home for half of each week, cooked the family meals, picked her granddaughter up at school two days per week, assisted with homework, and also played with the child.  During the last weeks of Chris Major's life, plaintiff Suzanne Major lived with him on a full-time basis and cared for him.  Plaintiffs contend that during Chris Major's final illness, plaintiff Anthony Major also spent time at his son's home with his granddaughter.

Following the death of plaintiffs' son on February 21, 2013, the relationship between plaintiffs and defendant was antagonistic.  According to plaintiffs, it was one of Chris Major's "last wishes" that his parents bar defendant and her

6

family from his funeral. Defendant did not permit her five-year-old child to attend the funeral without her. Defendant maintains that plaintiffs attempted to undermine her relationship with her daughter. According to defendant, plaintiffs called her disparaging names in the child's presence, and on one occasion, plaintiff Suzanne Major closed a door in defendant's face in order to speak with her granddaughter privately, "causing the child fear."

Testifying before the trial court, plaintiffs stated that defendant had permitted them to see their granddaughter only twice in the four months since Chris Major's death, initially in a half-hour visit at a skating rink and then in a five-minute meeting after a dance recital. According to plaintiffs, the constraints on their contact with their granddaughter prompted them to file their claim for grandparent visitation under N.J.S.A. 9:2-7.1.

II.

Plaintiffs commenced this action by filing a uniform "Verified Complaint" form complaint in the Family Part.[1] The

---

[1] Plaintiff's complaint was filed on a form issued by the Administrative Office of the Courts pursuant to Directive 08-11, dated September 2, 2011. Directive 08-11 provided that actions under the Non-Dissolution docket of the Family Part would be processed "as summary actions, with additional discovery at the discretion of the judge." Among the many categories of actions encompassed by the Non-Dissolution docket that are subject to

trial court promptly scheduled a hearing to consider the request for visitation. After the trial court granted a brief adjournment of the hearing, defendant filed an answer and counterclaim in which she requested that the trial court deny plaintiffs' application for visitation and award legal fees to her.

At the initial hearing, plaintiffs requested a "very brief" discovery schedule so that they could present expert testimony and explore mediation, and requested an opportunity to visit their granddaughter in the interim. Defendant's counsel advised the trial court that the child was doing well in school and was happy at home with her mother, stepfather, and newborn brother. Defendant's counsel argued that plaintiffs had failed to present the mandated prima facie showing of harm to the child, and informally moved before the trial court for the dismissal of plaintiffs' complaint with prejudice.

The trial court advised plaintiffs that they would not be entitled to discovery in the absence of a prima facie showing that denial of visitation would impose a particularized, identified harm on the child and that their complaint had failed to present such a showing. The court stated, however, that it

Directive 08-11 are "actions by non-parent relatives seeking . . . visitation with minor children."

8

would permit plaintiffs to supplement their complaint by testifying on direct examination, with no cross-examination allowed.

When the hearing resumed the following day, plaintiffs sought leave to present the testimony of an expert witness on the question of harm. The trial court declined that request, stating that before a parent is compelled to litigate a grandparent visitation action, the grandparents should demonstrate that they can meet their threshold burden of proof. Plaintiffs then testified about their son's relationship with defendant, their involvement in their granddaughter's life before and during her father's illness, and their efforts to maintain contact with the child after their son's death. Plaintiffs stated that their granddaughter had no relationship with any other relatives on her father's side of her family.

Plaintiffs expressed their view that if their granddaughter was deprived of a continued relationship with them, she would suffer harm. Plaintiff Suzanne Major testified that her granddaughter had not only "lost her daddy, but she's losing his family that she has known for almost six years," and stated her strong belief "that she needs us in her life and we need her in our life." Plaintiff Anthony Major testified that shortly after the child's father "was ripped out of her life by a disease,"

9

"we are being ripped out of her life also and no good can come of that[.]"

The trial court held that the complaint, as amended by plaintiffs' testimony, failed on two grounds to satisfy plaintiffs' threshold burden. First, the court found that plaintiffs had not demonstrated a particularized harm to the child in the absence of grandparent visitation. Second, relying on the Appellate Division's decision in Wilde v. Wilde, 341 N.J. Super. 381, 397 (App. Div. 2001), the trial court stated that before commencing litigation, grandparents should be required to make "substantial efforts at repairing the breach" in their relationship with the child's parent, and that litigation ordinarily should not be threatened before the parent has denied visitation "with finality." The court dismissed the complaint without prejudice, and denied plaintiffs' application for visitation.

An Appellate Division panel reversed the trial court's judgment. The panel invoked the procedural guidelines set forth in its decision in R.K., supra, 434 N.J. Super. at 137-40. Although the panel noted that R.K. had not yet been issued when the trial court ruled, it concluded that the trial court's approach was inconsistent with governing statutory and case law, and remanded so that the trial court could reexamine plaintiffs'

10

complaint in compliance with the Appellate Division's direction in R.K..

We granted certification.  218 N.J. 530 (2015).

III.

Defendant urges the Court to overrule the Appellate Division's decision in R.K..  She argues that by urging trial courts to allow discovery and case management in all grandparent visitation cases, the Appellate Division in R.K. contravened this Court's holding in Moriarty.  In the alternative, defendant argues that the case management procedures set forth in R.K. are burdensome and confusing to courts and litigants and should be rejected for that reason.  She contends that the trial court properly considered plaintiffs' failure to attempt mediation as a ground for dismissal of the complaint.

Plaintiffs counter that the Appellate Division's decision in R.K. does not alter the burden imposed by this Court in Moriarty but provides a thoughtful and careful procedural approach that safeguards the rights of parents and grandparents. According to plaintiffs, the Appellate Division properly clarified in R.K. that summary proceedings are an inappropriate procedural vehicle for the adjudication of grandparent visitation disputes and permitted discovery because the parties disputed the question of harm to the child.  They note that in R.K., the Appellate Division endorsed mediation as a case

11

management device, and represent that defendant refused to attempt mediation to resolve the parties' dispute.

Amicus Curiae New Jersey State Bar Association (NJSBA) urges the Court to reverse the Appellate Division's judgment and reinstate the trial court's judgment dismissing plaintiffs' complaint without prejudice. NJSBA argues that it would violate parents' constitutional rights to implement the case management and discovery procedures prescribed by the Appellate Division in R.K., unless the grandparents' complaint demonstrates an identifiable harm specific to the child that warrants judicial intervention. NJSBA advocates a two-step procedure whereby a trial court initially determines whether the grandparents have presented prima facie evidence of harm, viewing the facts in the light favorable to the grandparents, and addresses case management only after a finding that the mandated prima facie showing has been made.

IV.

A.

As do its counterparts in our sister states, New Jersey's Grandparent Visitation Statute confers on a child's grandparent or sibling standing to file an action for an order compelling

12

visitation.  Originally signed into law in 1972 and twice amended,[2] N.J.S.A. 9:2-7.1 provides:

> a. A grandparent or any sibling of a child residing in this State may make application before the Superior Court, in accordance with the Rules of Court, for an order for visitation. It shall be the burden of the applicant to prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child.
>
> b. In making a determination on an application filed pursuant to this section, the court shall consider the following factors:
>
> (1) The relationship between the child and the applicant;
> (2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;
> (3) The time which has elapsed since the child last had contact with the applicant;
> (4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
> (5) If the parents are divorced or separated, the time sharing arrangement which exists between the parents with regard to the child;
> (6) The good faith of the applicant in filing the application;
> (7) Any history of physical, emotional or sexual abuse or neglect by the applicant; and
> (8) Any other factor relevant to the best interests of the child.

---

[2] As amended a year after its enactment, N.J.S.A. 9:2-7.1 authorized a grandparent to seek visitation only in the event of the death of one or both parents, or the parents' separation or divorce.  N.J.S.A. 9:2-7.1 (as amended by L. 1973 c. 100, § 1). In 1993, the Legislature amended the statute again to its current form, eliminating the requirement that one or both parents be deceased, or that the parents be divorced or separated, in order for a grandparent to bring an action.  L. 1993 c. 161, § 1.

> c. With regard to any application made pursuant to this section, it shall be prima facie evidence that visitation is in the child's best interest if the applicant had, in the past, been a full-time caretaker for the child.

As the Court noted in Moriarty, supra, the "structure [of N.J.S.A. 9:2-7.1] underscores the fact-sensitive nature of the inquiry by detailing seven particularized considerations for the court and instructing the court to consider as well, 'any other factor' relevant to the child's best interests." 177 N.J. at 100.

By virtue of its intrusion on parental autonomy, N.J.S.A. 9:2-7.1 implicates due process principles. Federal jurisprudence, reaffirmed over nearly a century, recognizes that the Due Process Clause of the Fourteenth Amendment protects the "right[] . . . to direct the education and upbringing of one's children." Washington v. Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267, 138 L. Ed. 2d 772, 787 (1997); see also Wisconsin v. Yoder, 406 U.S. 205, 232-33, 92 S. Ct. 1526, 1541-42, 32 L. Ed. 2d 15, 35 (1972). In actions based upon state grandparent visitation statutes, parents have invoked this constitutional principle. See, e.g., McGarity v. Jerrolds, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013); Blixt v. Blixt, 774

14

N.E.2d 1052, 1056 (Mass. 2002), cert. denied, 537 U.S. 1189, 123 S. Ct. 1259, 154 L. Ed. 2d 1022 (2003).

In Troxel v. Granville, the United States Supreme Court sustained a due process challenge to a "breathtakingly broad" state statute that authorized any person to seek visitation of a child based solely on a judicial determination that such visitation was in the child's best interests.  530 U.S. 57, 66-68, 120 S. Ct. 2054, 2060-61, 147 L. Ed. 2d 49, 57-58 (2000).  A plurality of the Supreme Court declined to adopt a per se ban on state statutes allowing nonparent visitation, or to determine a standard of review for such statutes.  Id. at 73-74; 120 S. Ct. at 2064, 147 L. Ed. 2d at 61-62.  Instead, the Supreme Court generally reaffirmed that by virtue of a fit parent's fundamental due process right to raise his or her children, the parent is entitled to a presumption that he or she acts in the best interests of the child, and that the parent's determination whether to permit visitation is entitled to "special weight." Id. at 67-69; 120 S. Ct. at 2062-63, 147 L. Ed. 2d at 57-59. The Supreme Court held that the parties seeking visitation had failed to overcome the presumption that the parent's decisions were in the child's best interests.  Id. at 69-70, 120 S. Ct. at 2062, 147 L. Ed. 2d at 59.

The Supreme Court's decision in Troxel, in which the constitutionally infirm statute required no showing of harm, set

15

the backdrop for this Court's review of New Jersey's Grandparent Visitation Statute in Moriarty. There, the Court considered a surviving parent's appeal from a trial court's order compelling the parent to cooperate with grandparent visitation after the death of their daughter, who was the mother of the grandchildren. Moriarty, supra, 177 N.J. at 92-94. The defendant parent asserted that in light of Troxel, N.J.S.A. 9:2-7.1 was unconstitutional and that any order of visitation entered pursuant to that statute was invalid. Id. at 94-95.

This Court acknowledged that when the Legislature prescribed a cause of action for grandparent visitation of minor children in N.J.S.A. 9:2-7.1, it created a statutory remedy unrecognized at common law. Id. at 95 (citations omitted). It cited the United States Supreme Court's case law with respect to a due process right to parental autonomy, and noted that New Jersey courts have "recognized unfailingly that deeply embedded right in our jurisprudence as well." Id. at 102 (citing Watkins v. Nelson, 163 N.J. 235, 245 (2000); V.C. v. M.J.B., 163 N.J. 200, 217-18, cert. denied, 531 U.S. 926, 121 S. Ct. 302, 148 L. Ed. 2d 243 (2000); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999)); see also Fawzy v. Fawzy, 199 N.J. 456, 473 (2009) (noting primary role of parents in raising their children is "established beyond debate as an enduring tradition to which we have unflinchingly given voice"). In light of N.J.S.A. 9:2-

16

7.1's infringement on the fundamental right to parental autonomy, this Court held in Moriarty that the statute is subject to strict scrutiny and is only constitutional if it is narrowly tailored to serve a compelling state interest. 177 N.J. at 103 (citing Glucksberg, supra, 521 U.S. at 720-21, 117 S. Ct. at 2268, 138 L. Ed. 2d at 787-88; Roe v. Wade, 410 U.S. 113, 155-56, 93 S. Ct. 705, 728, 35 L. Ed. 2d 147, 178 (1973); Brown v. City of Newark, 113 N.J. 565, 573 (1989)).

Applying strict scrutiny to N.J.S.A. 9:2-7.1, the Court in Moriarty concluded that the need to avoid harm to the child is "the only state interest warranting the invocation of the State's parens patriae jurisdiction to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent[.]" Id. at 115. The Court held that absent a showing that the child would suffer harm if deprived of contact with his or her grandparents, the State could not constitutionally infringe on parental autonomy. Ibid.

The Court, therefore, augmented the statutory best-interests benchmark with a threshold determination of harm:

> [I]n every case in which visitation is denied, the grandparents bear the burden of establishing by a preponderance of the evidence that visitation is necessary to avoid harm to the child. The grandparents' evidence may be expert or factual. For example, they may rely on the death of a parent or the

17

> breakup of the child's home through divorce or separation. . . . In addition, the termination of a long-standing relationship between the grandparents and the child, with expert testimony assessing the effect of those circumstances, could form the basis for a finding of harm.
>
> [Id. at 117.]

The Court held that when grandparents present a showing of harm, the presumption in favor of parental decision-making is overcome. Id. at 117-18. Following such a finding, the parent is obliged to offer a visitation schedule, and if the grandparents agree to that schedule, "that will be the end of the inquiry." Id. at 117. If the parties are unable to agree on a visitation schedule, the trial court approves a schedule "that it finds is in the child's best interest, based on the application of the statutory factors." Ibid. (citing N.J.S.A. 9:2-7.1). Applying that test to the case before it, the Court held that the trial court had "presaged our opinion by [its] finding that visitation with the grandparents was necessary to avoid harm to the children" and reinstated the trial court's visitation order. Id. at 122.

In several cases following Moriarty, this Court and the Appellate Division held that plaintiff grandparents had failed to make the requisite showing of harm. See New Jersey Div. of Youth and Family Servs. v. P.W.R., 205 N.J. 17, 38-39 (2011) (holding in context of abuse and neglect determination pursuant

18

to Title Nine, N.J.S.A. 9:6-8.21 to -8.73, grandfather failed to show mental or emotional harm to child as a result of restrictions on grandparent visitation); Rente v. Rente, 390 N.J. Super. 487, 494-95 (App. Div. 2007) (holding that, given parent's willingness to allow monthly visits, grandmother failed to allege facts showing harm to child in absence of weekly visitation); Daniels v. Daniels, 381 N.J. Super. 286, 288-89 (App. Div. 2005) (affirming denial of grandparents' application for visitation in absence of allegation or evidence of harm to child); Mizrahi v. Cannon, 375 N.J. Super. 221, 223-25, 232 (App. Div. 2005) (reversing grant of grandparent visitation after trial court addressed best interests test but omitted inquiry into harm to child). These decisions underscore the heavy burden on grandparents seeking to satisfy the threshold requirement of Moriarty.

In short, N.J.S.A. 9:2-7.1 and our case law mandate a meticulous, fact-specific analysis of each application for grandparent visitation. As the Appellate Division noted in R.K., supra, each action "brings to the court its own set of unique challenges." 434 N.J. Super. at 151. In the wake of Moriarty, "potential harm to the child is the constitutional imperative that allows the State to intervene into the otherwise private and protected realm of parent-child relations." Fawzy, supra, 199 N.J. at 476. Absent a showing that the child will

19

suffer harm if grandparent visitation is denied, a trial court may not mandate visitation pursuant to the best-interests factors of N.J.S.A. 9:2-7.1, and should dismiss the complaint.

B.

This Court has not previously addressed in detail discovery and other procedural issues raised by grandparent visitation actions under N.J.S.A. 9:2-7.1. Several Appellate Division panels, however, have considered discovery, expert opinion, and case management questions in these matters.

In Wilde, supra, an Appellate Division panel reversed the trial court's order compelling the parent, who had not entirely barred visitation, to complete a psychological evaluation and to undergo "intensive therapy in addition to the supportive therapy which she is currently receiving." 341 N.J. Super. at 387, 398-99. The panel noted that although "there may be circumstances in which a fit parent is obliged to submit to psychological treatment in the context of a visitation action," the grandparents made no showing that would justify such a remedy in that case. Id. at 399. In Daniels, supra, another panel rejected the grandparents' request for unspecified discovery and an evidentiary hearing, noting that they had failed to plead specific facts in support of their claim, and that this Court in Moriarty did not endorse the imposition of "expensive and time-consuming discovery and other litigation costs on parents" in

20

every visitation action. 381 N.J. Super. at 292-93. In the absence of a prima facie showing of harm, the Appellate Division panel in Rente, supra, held that it was error for the trial court to compel a psychological review of the parties and to mandate discovery. 390 N.J. Super. at 493-95.

The Appellate Division's most comprehensive analysis of discovery and case management issues in grandparent visitation litigation was set forth in R.K., supra, 434 N.J. Super. at 137-39. There, the trial court rejected an attorney-drafted complaint filed on behalf of grandparents seeking visitation with their late daughter's child. Id. at 130. Instead, the trial court limited the grandparents to a form summary action complaint and then dismissed the complaint on the ground that the grandparents failed to make a prima facie showing of harm to the child. Id. at 130, 141-42.

The Appellate Division reversed that determination, observing that, given the showing required by Moriarty, grandparent visitation actions should not be managed as summary actions. Id. at 135-36. The panel held that all grandparent visitation cases should be assigned to a particular judge for individual case management, and that judge should "review the pleadings and determine whether active case management is needed." Id. at 137-38. It recommended that in any such case, the trial court should "first conduct a fact-sensitive analysis

21

applying the statutory factors in N.J.S.A. 9:2-7.1, to determine whether the grandparents have presented a prima facie case warranting the relief requested[,] . . . [and] then determine whether the grandparents have proven . . . that visitation is necessary to avoid harm to the child." Id. at 144-45 (citing Moriarty, supra, 177 N.J. at 117).

The panel deciding R.K. enumerated a non-exhaustive list of issues for consideration at an initial case management conference in a grandparent visitation dispute:

> In furtherance of this case-sensitive approach, we suggest the judge meet with the parties and counsel, if available, as soon as practical after joinder of issue, to determine, on the record: (1) the nature of the harm to the child alleged by plaintiff; (2) the possibility of settlement through mediation or as otherwise provided in Rule 5:5-5; (3) whether pendente lite relief is warranted; (4) the extent to which any of the facts related to the statutory factors identified in N.J.S.A. 9:2-7.1(b)(1) through (8) can be stipulated by the parties; (5) whether discovery is necessary, and if so, the extent and scope of the discovery, as permitted by Rule 5:5-1(a), written interrogatories, production of documents, Rule 4:18-1, request for admissions, and consent to release documents not within the possession of the party -- discovery may be completed within the time allotted in Rule 5:5-1(e), or as otherwise ordered by the court; (6) whether expert testimony will be required, and if so, the time for submission of the expert's report and curriculum vitae, the time for submission of defendant's rebuttal report if any, and whether deposition of the expert(s) will be required or permitted; (7) a protocol for the filing of

22

motions, including motions to compel discovery, motions seeking protective orders to exclude or limit evidence based on an assertion of privilege, or because the release of the information would adversely affect the child's best interest, or unduly infringe upon the privacy rights of the custodial parent; and (8) a tentative date for the filing of dispositive motions and/or a plenary hearing if necessary to adjudicate plaintiff's complaint and resolve any material facts in dispute.

[Id. at 138.]

The panel held that the trial court's dismissal of the grandparents' complaint, without holding a case management conference to gauge the need for discovery, constituted error. Id. at 151-53. Accordingly, it remanded the case for further proceedings. Id. at 153.

In amendments effective on September 1, 2015, this Court adopted three provisions recommended by the Supreme Court Family Practice Committee following the Appellate Division's decision in R.K., supra. Rule 5:4-2(j) permits a party to request, in a complaint or counterclaim, that his or her case be designated as "complex." Rule 5:4-2(i) authorizes the filing of a non-conforming complaint, to which is appended a completed supplement as promulgated by the Administrative Director, when a party seeks to have a non-dissolution matter designated as "complex" for purposes of Rule 5:5-7(c). Rule 5:5-7(c) permits a trial court, on the application of a party or on its own

23

initiative, to assign non-dissolution cases that "cannot be heard in a summary manner" to the complex track, "based only on a specific finding that discovery, expert evaluations, extended trial time or another material complexity requires such an assignment." Applications for complex track assignment made after the initial hearing may be considered "upon presentation of exceptional circumstances." Ibid.

In cases given the "complex" designation, Rule 5:5-7(c) requires the trial court to conduct a case management conference and to review with the parties some of the discovery, expert opinion, and motion practice issues identified by the Appellate Division in R.K., supra, 434 N.J. Super. at 138. The Rule imposes no such requirement for matters that are not deemed "complex"; such cases are handled as summary actions. See R. 5:5-7(c) (reserving complex track procedures for "exceptional cases" ill-suited to be managed as summary actions).

### C.

In that setting, we consider a procedural framework for the grandparents' presentation of a prima facie showing of harm, when a defendant challenges a grandparent visitation action by motion to dismiss and for the management of those cases if they progress beyond the pleading stage.

We recognize that grandparents seeking visitation are entitled to a meaningful opportunity to make the showing of harm

24

that Moriarty requires and, if that showing is made, a visitation schedule under the best-interests factors prescribed by the Legislature in N.J.S.A. 9:2-7.1. 177 N.J. at 117-18. We are also mindful that the mere pendency of a visitation claim may impose significant burdens on a family. As Justice Kennedy observed in his dissent in Troxel, supra,

> [i]t must be recognized, of course, that a domestic relations proceeding in and of itself can constitute state intervention that is so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated. The best interests of the child standard has at times been criticized as indeterminate, leading to unpredictable results. . . . If a single parent who is struggling to raise a child is faced with visitation demands from a third party, the attorney's fees alone might destroy her hopes and plans for the child's future.
>
> [530 U.S. at 101, 120 S. Ct. at 2079, 147 L. Ed. 2d at 78 (Kennedy, J., dissenting) (internal citation omitted).]

By virtue of its capacity to intrude upon the privacy of both parent and child and consume scarce resources, the parties' litigation may itself infringe on the parent's due process right to autonomy, and cause harm to the child whom the Grandparent Visitation Statute exists to protect.

In light of the compelling interests at stake -- most critically, the welfare of the child involved -- grandparent visitation litigation must be conducted with sensitivity and

25

overseen with care.  We derive several guiding principles for the management of these actions from N.J.S.A. 9:2-7.1 and our case law.

First, as applied to a complex grandparent visitation case, the Appellate Division's case management recommendations in R.K., supra, 434 N.J. Super. at 138, enhance the constitutional standard articulated in Moriarty.  We concur with the panel in R.K. that in some grandparent visitation actions, the limitations imposed in summary actions may deprive a litigant of an opportunity to meet his or her burden under the statute and case law.  See 434 N.J. Super. at 139.  We recognize, however, that the case management procedures envisioned by R.K. also impose burdens on the privacy and resources of a family, and that they are neither necessary nor appropriate in every case.

We consider the approach reflected in Rule 5:5-7(c) to strike the appropriate balance.  That Rule requires the trial court to hold initial and final case management conferences, and to enter an order addressing the full list of issues set forth in R.K., only in grandparent visitation cases that warrant assignment to the complex track.  See R. 5:5-7(c).  Visitation applications that are not "complex" may be handled as summary actions, with or without case management and discovery as authorized by Rule 5:4-4(a).  See R.K., supra, 434 N.J. Super. at 133 (noting while summary actions are ordinarily tried

26

without case management and discovery, trial courts may order discovery in appropriate cases); see also H.E.S. v. J.C.S., 175 N.J. 309, 324 (2003) (permitting discovery to protect due process rights); Welch v. Welch, 401 N.J. Super. 438, 445 (Ch. Div. 2008) (noting courts will allow discovery when good cause shown); Depos v. Depos, 307 N.J. Super. 396, 400 (Ch. Div. 1997) (same). Thus, when a trial court determines the need for complex case management in a particular case, the Appellate Division's case management recommendations in R.K. provide a practical template for courts and parties.

Second, when a party seeks to have the matter designated as "complex," the plaintiff should ordinarily file a non-conforming complaint, as permitted by Rule 5:4-2(i), to supplement the form pleading required by Directive 08-11. With no constraints on the length of their pleadings, many plaintiffs will be in a position to present a prima facie showing of harm in that complaint without the need for intrusive discovery. For example, in a case such as this one, the grandparent would be able to plead a showing of harm; he or she may allege his or her contacts with and care for a grandchild when the parent was alive, the timing and circumstances of the parent's death, any changes in family relationships that followed, the nature of the claimed harm, and other pertinent considerations. See N.J.S.A. 9:2-7.1(b)(1), (2), (3), (5), (8); Moriarty, supra, 177 N.J. at

27

Relevant facts within a grandparent's knowledge should be presented with precision and detail. Similarly, a parent opposing visitation should use his or her responsive pleading to identify issues on which the parties agree and counter the grandparents' factual allegations on disputed issues. See R. 5:4-3 (authorizing defendants in family action to file answers conforming to Rule 4:5-3). Informed by the pleadings, the trial court can make a considered judgment about the complexity of the matter, the need for fact or expert discovery, and the issues to be resolved.

Third, in the event that fact discovery is required, the court and the parties should work together to coordinate and streamline the process. See R. 5:5-7(c); R.K., supra, 434 N.J. Super. at 137-38. Whether the case is designated as complex or handled as a summary action, Family Part judges have broad discretion to permit, deny, or limit discovery in accordance with the circumstances of the individual case. See R. 5:4-4; R. 5:5-7(c); State in Interest of A.B., 219 N.J. 542, 554 (2014) (noting trial court's discretion to permit or deny discovery in Family Part matters); R.K., supra, 434 N.J. Super. at 133 (same). Under the court's supervision, the parties should address only the issues in dispute: whether the grandparents have met their burden to demonstrate harm to the child in the absence of visitation, and, if so, what visitation schedule will

serve the best interests of the child, applying the factors identified in N.J.S.A. 9:2-7.1.  Moriarty, supra, 177 N.J. at 117.

Any discovery should be carefully circumscribed to prevent or minimize intrusion on the privacy of the child and his or her family.  R.K, supra, 434 N.J. Super. at 151; see also R. 4:10-3 (authorizing courts to enter protective orders to avoid "annoyance, embarrassment, oppression, or undue burden or expense").  It is the rare case that will require the trial court to embark on a comprehensive inquiry into family history or probe the relationships of warring adults.  The court, counsel and parties should be aware that no matter how difficult the circumstances may be, the litigants' interests are not the primary concern.  Instead, the court's focus, and that of the parties, must be the welfare of the child.

Fourth, as the Court noted in Moriarty, supra, expert testimony may be necessary for grandparents to meet their burden under N.J.S.A. 9:2-7.1.  177 N.J. at 117; see also R.K., supra, 434 N.J. Super. at 138.  Particularly in settings in which one of the child's parents is deceased, and the other parent has barred or sharply limited the grandparents from contact with the child, parties seeking visitation may not have access to current information about the child's status.  In determining whether expert testimony is appropriate, trial courts should be

sensitive to the impact of expert involvement on family resources, protective of the privacy of the child, and mindful of an expert's potential value to the court and parties in suggesting a resolution of the dispute.

Fifth, even when it has afforded grandparents the opportunity to conduct fact or expert discovery, the trial court should not hesitate to dismiss an action without conducting a full trial if the grandparents cannot sustain their burden to make the required showing of harm. To that end, a court may dismiss summary actions pursuant to Rule 4:67-5, and decide complex visitation cases by summary judgment under Rule 4:46-2(c). Consistent with the due process autonomy interests recognized in Troxel, and Moriarty, a trial court should not prolong litigation that is clearly meritless.

Finally, trial courts should encourage parties to mediate or arbitrate grandparent visitation actions in accordance with New Jersey's strong policy in favor of alternative dispute resolution. See Gere v. Louis, 209 N.J. 486, 500 (2012) (noting state's policy in favor of alternative dispute resolution); Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 151 (1998) (same). In a meritorious case, a seasoned mediator or arbitrator with experience in visitation and custody issues may devise a solution for the parties' conflict promptly and inexpensively, to the benefit of the child and the parties.

D.

Applying those principles, we concur with the Appellate Division that the trial court erred when it granted defendant's informal request and dismissed plaintiffs' complaint, and that this case should be remanded to the trial court for further proceedings. Our remedy differs from the panel's remedy in one respect: the trial court need not reexamine the complaint on remand in order to determine whether plaintiffs have alleged sufficient facts for a prima facie showing in this case. The grandparents have established a prima facie case that the absence of visitation between the grandparents and their granddaughter will harm the child.

Although defendant did not file a motion to dismiss plaintiffs' complaint, the trial court evidently viewed defendant's informal application as a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 4:6-2(e).[3] That Rule affords to plaintiffs

---

[3] As an action filed in the Chancery Division, Family Part, this matter is governed "by the rules of Part IV insofar as applicable and except as otherwise provided by the rules in Part V." R. 5:1-1; see also Pressler & Verniero, Current N.J. Court Rules, comment to R. 5:1-1 (Gann 2015), (noting that the Family Part "is a fully integrated component of the Superior Court to which the rules governing civil and criminal proceedings in the trial courts are applicable unless otherwise provided in Part V"). Accordingly, Rule 4:6-2(e) governs a motion to dismiss a Family Part complaint on the ground that it fails to state a claim upon which relief can be granted. See Maeker v. Ross, 219 N.J. 565, 570-71 (2014).

31

"every reasonable inference of fact"; a reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989); see also Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006) (noting appellate review of order of dismissal under Rule 4:6-2(e) "is plenary and we apply the same test as the Law Division"). When plaintiffs are afforded every reasonable inference of fact, their evidence gives rise to a prima facie showing of harm.

Plaintiffs' showing meets the requirements of Moriarty for several reasons. First, it was not merely a separation or divorce that prompted the family dispute in this case but the death of the child's father. In Moriarty, supra, this Court recognized the significance of the death of the mother, crediting the trial court's finding that the children's bond with their mother's side of the family was critically important to their security and self-esteem in the wake of their loss. 177 N.J. at 121. The same concerns are raised by the record here. Plaintiffs demonstrated that their granddaughter enjoyed a close relationship with her father, who shared custody with the girl's mother, and contended that his death caused a major

32

trauma in the child's life. Plaintiffs represented that they are the only relatives on their side of the family with whom their grandchild has a relationship. While a parent's death, without more, does not automatically give rise to a prima facie showing of harm, it is an important factor in this setting.

Second, plaintiffs presented evidence that they had maintained a close bond with their granddaughter prior to her father's death, and assumed significant responsibility for her care during her father's parenting time. Plaintiff Suzanne Major, the child's grandmother, testified that she visited the child every weekend when the child was staying at her father's home, hosted her granddaughter at her own home about once a month, attended dance recitals, traveled with the child, and annually brought the child to work for a special event. She stated that after the child's father became ill, she lived part-time with her son and her granddaughter and cared for the child, and then later assumed the burden of full-time care for her son. The recent death of this child's father, in concert with plaintiff's allegation that the child was deprived of the consistent presence of her grandmother, gave rise to a prima facie showing of harm.

Although plaintiff Anthony Major offered less compelling evidence than did his co-plaintiff, he nonetheless presented sufficient evidence to meet his prima facie burden. He

33

testified that between his son's separation from defendant and his son's death, he saw his granddaughter about every other week, then more frequently after he purchased his boat. Plaintiff also testified that during his son's final illness, he was present in the home with his former wife, his son, and his granddaughter several days a week. He met his burden to make a prima facie showing of harm under N.J.S.A. 9:2-7.1 and Moriarty, supra, 177 N.J. at 117, at the pleading stage.

As did the Appellate Division, we disagree with the trial court's ruling that grandparents may not threaten or institute litigation before visitation has been denied with finality. Although all parties should make efforts to resolve grandparent visitation issues without resorting to litigation, no such threshold requirement is imposed by N.J.S.A. 9:2-7.1 or the case law. Indeed, in Moriarty, supra, this Court held that if there is a finding "that the potential for harm has been shown," the "same standard" governs cases in which the parent bars visitation entirely and cases in which the parent offers a schedule that the grandparent challenges as inadequate. 177 N.J. at 117-18. In both instances, if the grandparent proves that visitation is necessary to prevent harm, the court applies the factors in N.J.S.A. 9:2-7.1 to determine whether the schedule proposed by the parents promotes the child's best

interests.  Ibid.  The trial court's rejection of plaintiffs'

complaint as premature was improper.[4]

Accordingly, on remand, the trial court should permit this

matter to proceed beyond the pleading stage.  Managing this case

as a "complex" matter for purposes of Rule 5:5-7(c), the trial

court should assess the need for fact discovery, expert

testimony, and motion practice in accordance with R.K. and

should encourage the parties to pursue mediation or arbitration

of their dispute.  In a dispositive motion, or at trial

following discovery if no motion is granted, the court should

determine whether plaintiffs have met their burden to prove that

in the absence of visitation, their granddaughter will suffer

harm.  See Moriarty, supra, 177 N.J. at 117.  If either

plaintiff meets the burden of proof, defendant must offer a

visitation schedule to that plaintiff, and, if the parties

cannot agree, the trial court should compel visitation that it

considers to be in the best interests of the child.  Id. at 117-

18.  If plaintiffs fail to meet that burden, their action should

---

[4] We do not share the Appellate Division's view that the trial judge improperly injected his personal views when he admonished plaintiffs that they should have pursued non-adversarial means of resolving the controversy before filing suit.  It is clear from the record that the trial court relied in that regard on the Appellate Division's decision in Wilde, supra, 341 N.J. Super. at 398, and was not expressing a personal opinion.

be dismissed.  See Rente, supra, 390 N.J. Super. at 494 (citing

Moriarty, supra, 177 N.J. at 117).

                                    V.

     The judgment of the Appellate Division is affirmed as

modified.


     CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and SOLOMON; and
JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON'S
opinion.  JUSTICES ALBIN and FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-110                          SEPTEMBER TERM 2013

ON APPEAL FROM        Appellate Division, Superior Court


ANTHONY C. MAJOR and
SUZANNE MAJOR,

        Plaintiffs-Respondents,

                v.

JULIE MAGUIRE n/k/a
JULIE DI LIBERTO,

        Defendant-Appellant.



DECIDED            January 12, 2016
                   Chief Justice Rabner                    PRESIDING
OPINION BY         Justice Patterson
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY


| CHECKLIST | AFFIRM AS MODIFIED/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | -------------------- | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |