**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2756-15T1

NANTICOKE LENNI-LENAPE
TRIBAL NATION,

    Plaintiff-Appellant,

v.

JOHN J. HOFFMAN, Acting Attorney
General of the State of New Jersey,

    Defendant-Respondent.

_____

Argued June 6, 2017 — Decided July 10, 2017

Before Judges Ostrer, Leone and Vernoia.

On appeal from the Superior Court of New
Jersey, Law Division, Mercer County, Docket
No. L-2343-15.

Gregory A. Werkheiser (Cultural Heritage
Partners, PLLC) of the Washington, DC bar,
admitted pro hac vice, argued the cause for
appellant (Barry, Corrado & Grassi, P.C., and
Mr. Werkheiser, attorneys; Frank L. Corrado,
and L. Eden Burgess (Cultural Heritage
Partners, PLLC) of the Washington, DC bar,
admitted pro hac vice, on the brief).

Stuart M. Feinblatt, Assistant Attorney
General, argued the cause for respondent
(Christopher S. Porrino, Attorney General,
attorney; Mr. Feinblatt, of counsel and on the
brief; Kimberly A. Hahn, Deputy Attorney
General, on the brief).

Andrews Kurth LLP, attorneys for amici curiae Indian Law Resource Center, Alliance of Colonial Era Tribes, and Religious Society of Friends Salem Quarter Indian Affairs Committee (Joseph A. Patella, on the brief).

PER CURIAM

Plaintiff Nanticoke Lenni-Lenape Tribal Nation filed a five count complaint alleging defendant, the New Jersey Attorney General,[1] violated its rights under the New Jersey Constitution and breached duties imposed under the common law by denying and repudiating the State's prior recognition of plaintiff as an American Indian Tribe. Plaintiff alleged defendant's actions have and will deprive it of benefits under various federal statutes and programs that are conditioned upon the State's recognition of it as an American Indian Tribe. The trial court granted defendant's motion to dismiss the complaint under Rule 4:6-2(e), finding plaintiff's claims are barred because the State never enacted a statute expressly recognizing plaintiff as an American Indian Tribe. We reverse because we find the court applied the wrong legal standard and incorrectly failed to accept plaintiff's factual allegations in the complaint as true.

---

[1] Acting Attorney General John Jay Hoffman was named as the defendant in the complaint in his individual and official capacities. Hoffman's tenure ended in March 2016.

Because we review the trial court's dismissal of the complaint under Rule 4:6-2(e), we accept as true the factual allegations in the complaint. Craig v. Suburban Cablevision, 140 N.J. 623, 625 (1995). Plaintiff is "a constitutionally organized, self-governing, inherently sovereign American Indian tribe," a majority of whose members reside in New Jersey. It is presently comprised of about 3,000 members, and maintains tribal grounds in Burlington County.

Plaintiff avers that in 1982, the State Legislature adopted a concurrent resolution "officially recogniz[ing] plaintiff as an American Indian Tribe."[2] Since the enactment of the resolution, plaintiff has received benefits under various federal statutes and programs based on New Jersey's recognition of plaintiff as an American Indian Tribe.

Plaintiff further alleges that following the adoption of the resolution, the State routinely reaffirmed its recognition of plaintiff and two other tribes as American Indian Tribes "through

---

[2] A copy of New Jersey Senate Concurrent Resolution No. 73 (1982), was submitted in support of defendant's motion to dismiss the complaint. The resolution resolved that "the Confederation of Nanticoke-Lenni Lenape Tribes of southern New Jersey, an alliance of independent surviving tribes of the area, is hereby designated by the State of New Jersey as such," and that "the Congress of the United States, is hereby memorialized to acknowledge the Confederation . . . as such."

a series of actions consistent with and necessarily predicated upon that recognition." In 1992, the Legislature passed, and the Governor signed into law, <u>L.</u> 1991, <u>c.</u> 359, which amended <u>N.J.S.A.</u> 26:8-49, entitled "[c]orrections to birth and fetal death certificates." The statute states in part:

> In the case of a correction to the birth record of a member of one of the three New Jersey tribes of American Indians, the Powhatan-Renape Nation, the Ramapough Mountain Indians, <u>or the Nanticoke[ ]Lenni-Lenape Indians</u>, the substantiating documentary proof may include, but shall not be limited to, an affidavit, satisfactory to the State registrar or any local registrar and signed by the chief of the tribe that according to tribal records the person whose certificate is to be amended is a member of the tribe of the chief whose signature appears on the affidavit.
>
> [<u>N.J.S.A.</u> 26:8-49 (emphasis added).]

The Assembly Health and Human Services Committee explained:

> . . . This bill permits corrections to birth certificates and fetal death certificates of certain American Indians to be made on the basis of an affidavit signed by the tribal chief stating that the person in question is a member of the tribe according to tribal records. American Indians are frequently issued birth certificates indicating an incorrect race, and often encounter difficulties in obtaining evidence satisfactory to the State registrar of vital statistics or to local registrars to support their claims that their birth certificates should be amended. This bill would specifically allow a chief of one of the three New Jersey tribes, the Powhatan-Renape Nation, the Ramapough Mountain Indians, or the

Nanticoke[]Lenni-Lenape Indians, to submit affidavits concerning tribal records which could be used as proof of membership in the chief's tribe.

[Gen. Assem. Health and Human Servs. Comm., Statement to Gen. Assem. No. 999 (codified at N.J.S.A. 26:8-49).]

In September 1992, the Office of Governor James Florio sent a letter to the federal Indian Arts & Crafts Board. The Board regulates the use of the "Indian-made" label on products, and permits only state or federally recognized tribes to use the label. The letter stated:

Governor Florio has asked me to respond to your recent letter about the state of state-recognized Indian tribes in New Jersey. The New Jersey State Legislature, comprised of the Senate and Assembly, is the law-making body that is responsible for the legal recognition of Indian tribes. Formal recognition is accomplished by State Resolutions, which remain in effect until rescinded. To date, three tribes have been recognized.

In 1995, the Legislature passed and the Governor approved legislation creating the nine-member Commission on Native American Affairs. See L. 1995, c. 295, codified as N.J.S.A. 52:16A-53 to -58.[3] The Commission "act[s] as a liaison among American Indian communities, the State and federal governments, and educational, social and cultural institutions." N.J.S.A. 52:16A-56(e). The

---

[3] The legislation was amended in 2001. L. 2001, c. 417, §§ 2-7.

Commission consists of nine members: the Secretary of State and eight public members; "[t]wo of the public members shall be members of [plaintiff], to be appointed by the Governor on the recommendation of [plaintiff] and with the advice and consent of the Senate." N.J.S.A. 52:16A-53. There are also two members appointed from the Ramapough Mountain Indians, the Powhatan Renape Nation, and the "Intertribal People." Ibid. "Intertribal People" are American Indians who reside in New Jersey and are not members of the three aforementioned tribes, but are "enrolled members of another tribe recognized by another state or the federal government." Ibid.

In February 2000, the Office of New Jersey's Secretary of State "confirmed, upon inquiry, that the State of New Jersey has recognized three groups of Indians. They are referred to in the law as the Nanticoke Lenni-Lenape Indians, the Ramapough Mountain Indians, and the Powhatan Renape Nation."

Also in 2000, the Office of Governor Christine Todd Whitman "confirmed to the U.S. Department of Commerce, Census Bureau, that [plaintiff] [was] one of New Jersey's three state-recognized American Indian tribes." The U.S. Census Bureau responded by stating that its records showed the State granted recognition to tribal governments including plaintiff.

In a November 2000 report to the Governor and Legislature, the Commission stated there were "only three tribes" "legally recognized by the State" and identified plaintiff as one of them. According to plaintiff, between 2000 and 2001, "multiple governmental environmental assessments for improvements at McGuire Air Force Base confirmed that [plaintiff] is state-recognized."

In 2001, an individual claiming to represent his own newly created tribe sued the State seeking to acquire land, and plaintiff sued the individual "to prevent him from implying any association with it." The individual's lawsuit "failed, in part, because the [S]tate asserted that the citizen was not affiliated with one of its three existing tribes."

In March 2003, U.S. Senator John Corzine wrote to the U.S. Department of the Interior stating:

> The Nanticoke Lenni-Lenape have been functioning as a designated tribe in New Jersey since a concurrent resolution passed the New Jersey Legislature to designate them as such in 1982. As a result, the Nanticoke Lenni-Lenape has received grants and services from federal programs for [state-recognized] Indians.

In 2006, Governor Corzine created the Committee of Native American Community Affairs "to research and report on the social and economic conditions of New Jersey's state-recognized American Indian tribes and other American Indian communities." The

7

Committee issued a 2007 report observing "that while the [S]tate's prior recognition of the Tribes was legally sufficient, it was proving politically insufficient, because over time members of the state bureaucracy had begun to undermine the tribes' status out of confusion and prejudice," and recommending "that further steps be taken to reaffirm the recognition of 25 years prior, with options including refreshed concurrent resolutions, an executive order, or legislation." The report found:

> Concurrent New Jersey legislative resolutions passed in 1980 and 1982 recognized three New Jersey Native American tribes — the Nanticoke Lenni-Lenape, the Powhatan Renape, and the Ramapough Lenape [sic] . . . . [The Committee] determined that the 1980 and 1982 concurrent legislative resolutions did recognize the three New Jersey American Indian tribes . . . . New state action might be taken to further "affirm state recognition for [the] three tribes previously recognized . . . ," even if such legislation was not required.

In 2010, "the [S]tate once again affirmed to the U.S. Census Bureau that [plaintiff] was state-recognized."

Plaintiff's complaint also detailed alleged actions taken by State officials to undermine the State's recognition of plaintiff as an American Indian Tribe. Plaintiff alleges that in 2001, in response to a request from the federal Indian Arts & Crafts Board to the Commission for any additions to the State's list of recognized tribes, the Division of Gaming Enforcement wrote a

letter advising that the State had no state-recognized tribes. The letter, written by the Director of the Division of Gaming Enforcement, stated that the 1982 concurrent resolution did not formally recognize plaintiff, and added that only the federal government could determine whether the tribes were state-recognized.

In 2012, the federal General Accountability Office (GAO) issued a report "on the status of American Indians in the U.S." Plaintiff then "discovered from the federal government that a state employee assigned to staff the state Commission on American Indian Affairs had, without the knowledge or consent of the Commissioners who are charged with executing its mission, informed the GAO that New Jersey had no state-recognized tribes." Plaintiff subsequently "sought answers from [d]efendant." According to plaintiff, defendant's Chief of Staff proposed a "formal written retraction of the state's previous state correspondence denying the state-recognition of the tribes," but it never came to fruition.

Plaintiff alleges that as a consequence of the State's repudiation of its recognition of plaintiff as an American Indian Tribe, plaintiff has suffered and will continue to suffer the loss of: the ability to market and sell products as "Indian-made" under the Indian Arts and Crafts Act, 25 U.S.C.A. §§ 305 to 310; grants

from the U.S. Department of Health and Human Services Administration (HHS) for Native Americans; the ability to do business as a certified tribal company; educational opportunities and funding; loss of funding from HHS's block grant program; membership and standing in professional organizations, including the National Congress of American Indians; approval for lines of credit; and eligibility for government contracts.

Based on the foregoing allegations, plaintiff asserted causes of action for violation of plaintiff's right to procedural due process, substantive due process, and equal protection under the New Jersey Constitution. Plaintiff also asserted claims that defendant is estopped from repudiating its recognition of plaintiff as an American Indian Tribe, and the repudiation constitutes arbitrary and capricious action under state law.

Defendant moved to dismiss the complaint, claiming plaintiff's causes of action were fatally flawed because the State never officially recognized plaintiff as an American Indian Tribe in the first instance. Defendant argued plaintiff's causes of action were deficient as a matter of law because they were based on the false premise that plaintiff had been recognized by the State. Defendant asserted state recognition could only be extended by statute, and that the 1982 concurrent resolution and the other statutes and declarations referenced in the complaint were

insufficient to confer the state recognition claimed by plaintiff. Defendant argued it could not unlawfully repudiate a recognition that was never officially granted and, as a result, plaintiff's causes of action should be dismissed.

In an oral opinion, the court stated that it was plaintiff's position that "New Jersey law recognizes"[4] plaintiff as an American Indian Tribe. The court limited its consideration of defendant's motion to a determination of whether there was a New Jersey statute extending recognition. The court reasoned that the 1982 resolution was insufficient to establish recognition because it did not constitute a law under Article 5, Section 1, Paragraph 14 of the New Jersey Constitution.[5]  The court further found that although N.J.S.A. 26:8-49, which was enacted in 1992, expressly states that plaintiff is one of New Jersey's "Tribes of American Indians," it is not a law that extended recognition because it was intended

---

[4]  This is an incorrect statement of plaintiff's position. Plaintiff's complaint alleges that the 1982 resolution, subsequent statutes, and the pronouncements of State officials conferred or confirmed recognition sufficient for its receipt of various federal government benefits.

[5] The court found that under the State Constitution a law must first be approved by both houses of the Legislature and then only becomes a law if signed by the Governor within the time period allowed, or is not returned to the Legislature by the Governor with objections before the time expires for his consideration, or if the Legislature overrides the Governor's objections.

only to identify plaintiff as "an ethnic group for vital statistic purposes."

The court did not address the 1995 enactment of N.J.S.A. 52:16A-53, which established the Commission, but instead relied on an amendment to N.J.S.A. 52:16A-56(g)[6] providing that recognition of the "authenticity of any organization, tribe, nation or other group as an American Indian Tribe . . . shall require specific statutory authorization." The court determined there was no statute extending recognition to plaintiff as an American Indian Tribe, and that plaintiff's complaint did not state claims upon which relief could be granted because they were premised on the incorrect legal contention that plaintiff was a state recognized American Indian tribe. The court entered an order granting defendant's motion to dismiss the complaint. This appeal followed.

## II.

Rule 4:6-2(e) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering an application for relief under this rule, a court is required to "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be

---

[6] The amendment became effective on January 8, 2002. L. 2001, c. 417, § 4.

gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Major v. Maguire, 224 N.J. 1, 26 (2016) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

We review an order of dismissal under Rule 4:6-2(e) de novo and "apply the same test as the Law Division." Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). In other words, "our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint," and determining if "a cause of action is 'suggested' by the facts." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart, supra, 116 N.J. at 746). "The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach." Printing Mart, supra, 116 N.J. at 746.

The complaint alleges plaintiff received various federal benefits since 1982 because it satisfied a required condition for the receipt of the benefits: state recognition as an American Indian tribe. The complaint further alleges the State has wrongfully repudiated its recognition and that plaintiff has therefore lost and will lose federal benefits it has enjoyed since 1982.

13                                                          A-2756-15T1

Defendant's motion to dismiss the complaint was founded solely upon the argument that the State never granted recognition qualifying plaintiff for the receipt of federal benefits. Defendant argued recognition could be extended only by statute, there was no statute extending recognition, and thus plaintiff's claims rested on a false legal premise and should be dismissed. The court accepted defendant's argument, found that a statute was required for an extension of state recognition, and concluded defendant could not wrongfully repudiate recognition that had never been granted.

Based on our review of the complaint, we are convinced the court erred in dismissing plaintiff's claims for two reasons. First, the court failed to accept plaintiff's factual allegations that the State has recognized plaintiff as an American Indian tribe in a manner sufficient for plaintiff's receipt of federal benefits. Second, the court erred by failing to apply the applicable federal standards in determining that state recognition was never granted. We address the issues in turn.

In considering defendant's dismissal motion, the court was required to accept the complaint's factual allegations as true and interpret them with great liberality. See Major, supra, 224 N.J. at 26. The court's conclusion that a statute extending recognition was required for plaintiff's receipt of federal benefits, however,

14                                                    A-2756-15T1

is contradicted by the facts alleged in the complaint. According to the complaint, plaintiff has continuously received federal benefits since 1982 based on the State's recognition of it as an American Indian Tribe.

The complaint alleges the federal government accepted the actions of the State, whether by concurrent resolution, declarations of government officials, statutes such as N.J.S.A. 26:8-49 and N.J.S.A. 52:16A-53,[7] or otherwise, as recognition sufficient to qualify plaintiff for federal benefits. Therefore, the court's determination that a statute was required to extend the recognition is incorrect as a matter of fact based on the allegations in the complaint. If, as the court found, a statute was the only means of obtaining state recognition satisfying the federal standard for benefits, plaintiff would not have received federal benefits based on state recognition since 1982 as alleged in the complaint.[8]

---

[7] Because we conclude defendant's claim plaintiff did not receive state recognition sufficient to qualify it for federal benefits must be determined under the federal standards, we do not offer an opinion on the court's determination that N.J.S.A. 26:8-49 did not constitute sufficient state recognition other than to note the court made its determination without reference to the federal standards.

[8] We recognize that N.J.S.A. 52:16A-56(g) was amended in 2002 to provide that recognition of an American Indian Tribe "shall require specific statutory authorization. Defendant states it is not

Moreover, the court erred by failing to consider or apply the federal standard for determining whether plaintiff was a state recognized American Indian tribe entitled to receive the benefits cited in the complaint. Plaintiff claimed a loss of benefits which are awarded only upon the federal government's acceptance of state recognition of an American Indian tribe. As such, federal standards determine whether a state's action constitutes recognition sufficient for the award of benefits.[9]

We offer no opinion on the applicable standards for the federal government's acceptance of the State's recognition of plaintiff during the period alleged in the complaint. The standards were not considered by the motion court. It appears the current standards are flexible and differ among the federal agencies from

---

claiming N.J.S.A. 52:16A-56(g) is retroactive. We offer no opinion on that subject or the effect of the enactment on plaintiff's entitlement to federal benefits. We observe that the court offered no support for its conclusion that a statute was required for state recognition prior to the 2002 amendment, and did not address the federal government's continuing grant of benefits to plaintiff based on state recognition following the amendment.

[9] The federal government may directly recognize a tribe as an American Indian Tribe. See generally 25 C.F.R. §§ 83.1 to 83.12. Plaintiff does not allege direct federal recognition here. Plaintiff alleges that New Jersey's recognition has qualified it for the receipt of federal benefits since 1982 and defendant's actions constitute a wrongful and constitutionally impermissible repudiation of the State's recognition.

which plaintiff has received benefits. But they do not expressly require the enactment of a state statute extending recognition.[10] See e.g., 20 U.S.C.A. § 1401(13) (defining "Indian tribe" under the Individuals with Disabilities Education Act as "any Federal or State Indian tribe, band, rancheria, pueblo, colony, or community"); 25 U.S.C.A. § 4103(13)(A) (defining a "State recognized tribe" under the Native American Housing Assistance and Self-Determination Act as "any tribe, band, nation, pueblo, village, or community . . . that has been recognized as an Indian tribe by any State" and entered into a contract under the United States Housing Act of 1937); 25 C.F.R. § 309.2(e)(2) (providing the Indian Acts and Crafts Act applies to tribes that are "formally recognized . . . by a State legislature or by a State commission, or similar organization vested with State tribal recognition authority"); 34 C.F.R. § 263.3(3)(1) (providing that under the

---

[10] "State recognition can take a variety of forms, and federal laws extending to state-recognized tribes defer to the states' characterizations." Cohen's Handbook of Federal Indian Law § 3.02 (2015). "Some states administer lands set aside for tribal groups that are not recognized by the federal government. Other states provide political recognition through representation on state Indian commissions or councils, or administer benefit programs for non-federally recognized tribes located within their boundaries." Ibid. "At least one state has authorized a state-recognized tribe to create a police force, vested with most of the same powers as state or municipal officers." Ibid. "Another form of state recognition may consist of merely acknowledging that a particular tribal group constitutes the indigenous people of a particular area in the state." Ibid.

Department of Education's Professional Development Program, "Indian" means "[a] member of an Indian tribe or band, as membership is defined by the Indian tribe or band, including . . . any tribe or band recognized by the State in which the tribe or band resides"); 45 C.F.R. § 96.44(b) (finding "[a]n organized group of Indians" eligible for a block grant "based on [s]tate recognition if the State has expressly determined that the group is an Indian tribe," including by a "statement of the State's chief executive officer verifying" state recognition); 45 C.F.R. § 1336.33(a)(3)(ii),(4)(ii) (providing the eligible groups for certain Native American programs under the HHS include "[i]ncorporated non-Federally and State recognized" tribes).

We do not offer an opinion as to whether the resolution, statutory enactments, or pronouncements by the State officials cited in the complaint were sufficient under the past or present federal standards to correctly bestow upon plaintiff the federal benefits it claims it lost and will lose as a result of the State's actions. On a motion to dismiss the complaint, it is sufficient that the complaint alleges they were. We decide only that the court erred by not accepting as true the facts alleged in the complaint and by determining, without regard to the complaint's factual allegations or the federal standards for state

A-2756-15T1

recognition, that the State did not grant recognition in the first instance.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION