885 A.2d 524 (2005)
381 N.J. Super. 286
Lois DANIELS, Plaintiff-Appellant,
v.
Michael DANIELS and Donna Daniels, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 2005.
Reargued October 28, 2005.
Decided November 16, 2005.
Christopher L. Garibian, Morristown, argued the cause for appellant (Salvaggio Garibian, attorneys; Mr. Garibian, on the brief).
Alan L. Zegas, Chatham, argued the cause for respondents (Mr. Zegas and Edward J. Turro, Cedar Grove, on the brief).
Before Judges COBURN, LISA and S.L. REISNER.
The opinion of the court was delivered by
*525 S.L. REISNER, J.A.D.
This case arises from a complaint in which plaintiff, Lois Daniels, sought visitation with her grandchildren pursuant to the Grandparent Visitation Statute (GVS), N.J.S.A. 9:2-7.1. The trial court granted defendants' motion to dismiss on the grounds that, because defendants, the parents of the grandchildren, were an "intact family" and were united in their opposition to letting the grandmother have visitation with their children, the GVS could not constitutionally be applied to force them to permit visitation by the plaintiff. We affirm the trial court's order dismissing the complaint, but on somewhat narrower grounds.

I
The complaint, filed February 13, 2004, recited that plaintiff had previously exercised "significant visitation with the minor children" and had a "strong and loving relationship" with them. The complaint further recited that "for reasons unknown to the Plaintiff" the defendants had refused to permit her to spend time with the grandchildren. The complaint did not allege that the children had suffered harm or would suffer harm by virtue of this lack of visitation from plaintiff. Nor did the complaint allege any unusual circumstances that would likely give rise to particular harm from denial of visitation.
For example, the complaint did not allege that plaintiff had acted as a substitute parent for an extended period of time while one or both of the biological parents had been incapacitated or absent. Nor did the complaint allege that either or both parents were unfit, or that the children had any unique circumstance which would cause them to be harmed if they did not visit with their grandparent.
On February 25, 2004, plaintiff filed a "Motion for Grandparent Visitation." In support of that motion, plaintiff submitted a lengthy certification, reciting her close and loving relationship with her two grandchildren (then ages six and three), her past repeated conflicts with defendants over her desire to have more time to visit with the grandchildren than they wanted her to have, and her anguish over her inability to see the grandchildren at all since August 2003. The certification asked the court to make a "best interests" determination with respect to plaintiff's visitation application and asserted, in general terms, that defendants' actions were "harming" the grandchildren. The certification offered no factual support for this general allegation of harm.
Defendants filed a motion on March 10, 2004, for a declaration that "the New Jersey Grandparent Visitation Statute, N.J.S.A. 9:2-7.1[is] unconstitutional, both facially and as applied, under both the New Jersey Constitution and the Constitution of the United States." Their motion also asked the court to deny the visitation motion and to dismiss the complaint. The motion was supported by certifications from both defendants, detailing the long history of their contentious relationship with plaintiff, including her repeated attempts to interfere with the way they chose to raise their children. The certifications of all parties agreed that on August 28, 2003, there had been a serious "blow-up" between Donna Daniels and plaintiff, which occurred in the children's presence, and that this incident had been the catalyst for defendants' decision to cut off contact between plaintiff and the children. In their certifications, Donna and plaintiff each blamed the other for this incident.
On April 1, 2004, the trial court denied defendants' motion to dismiss without prejudice and ordered the parties to attempt *526 to settle the case. When no settlement was forthcoming, the court heard oral argument on July 15, 2004, and granted the motion to dismiss. Because the court considered matters outside the pleadings, the motion was automatically converted to one for summary judgment. R. 4:6-2. As further discussed in this opinion, summary judgment was properly granted, because neither plaintiff's complaint nor her proofs raised claims constitutionally cognizable under the Grandparent Visitation Statute.

II
As originally enacted, the Grandparent Visitation Statute, N.J.S.A. 9:2-7.1, did not apply to "`intact families' (those not disrupted by death or divorce)." Moriarty v. Bradt, 177 N.J. 84, 99, 827 A.2d 203 (2003), cert. denied, 540 U.S. 1177, 124 S.Ct. 1408, 158 L.Ed.2d 78 (2004). In 1993, the GVS was amended to extend visitation rights to grandparents even where both parents were living as an intact family. As amended in 1993, the GVS provides that
a. A grandparent or any sibling of a child residing in this State may make application before the Superior Court, in accordance with the Rules of Court, for an order for visitation. It shall be the burden of the applicant to prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child.
b. In making a determination on an application filed pursuant to this section, the court shall consider the following factors:
(1) The relationship between the child and the applicant;
(2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;
(3) The time which has elapsed since the child last had contact with the applicant;
(4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
(5) If the parents are divorced or separated, the time sharing arrangement which exists between the parents with regard to the child;
(6) The good faith of the applicant in filing the application;
(7) Any history of physical, emotional or sexual abuse or neglect by the applicant; and
(8) Any other factor relevant to the best interests of the child.
c. With regard to any application made pursuant to this section, it shall be prima facie evidence that visitation is in the child's best interest if the applicant had, in the past, been a full-time caretaker for the child.
[N.J.S.A. 9:2-7.1.]
However, as the result of the Supreme Court's decision in Moriarty v. Bradt, supra, the scope of the statute was significantly curtailed. In Moriarty, the Court held, as a matter of constitutional law, that grandparent visitation could not be ordered without a showing that the child would be harmed without such visitation:
Because the Grandparent Visitation Statute is an incursion on a fundamental right (the right to parental autonomy), under Watkins [v. Nelson, 163 N.J. 235, 748 A.2d 558 (2000)] it is subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest. Our prior jurisprudence establishes clearly that the only state interest warranting the invocation of the State's parens patriae jurisdiction to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child. When no harm threatens a child's welfare, *527 the State lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit. However, when harm is proved and the presumption in favor of a fit parent's decision making is overcome, the court must decide the issue of an appropriate visitation schedule based on the child's best interests.
Although Troxel[1] avoided confronting that issue directly, we are satisfied that prior United States Supreme Court decisions fully support our conclusion that interference with parental autonomy will be tolerated only to avoid harm to the health or welfare of a child.
[Id. at 114-15, 827 A.2d 203 (citation omitted).]
Moriarty drew upon a prior decision, Watkins v. Nelson, 163 N.J. 235, 748 A.2d 558 (2000), which held that custody disputes between a parent and any third party require a two-step analysis in which the court must first find exceptional circumstances (e.g., harm to the child) and then must weigh the best interests of the child with respect to the issue of custody. Watkins, supra, 163 N.J. at 253-54, 748 A.2d 558. Absent exceptional circumstances, however, there is no basis to interfere with the parent's constitutional right to the "`custody, care and nurture of the child.'" Id. at 254, 748 A.2d 558, quoting Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968).
Applying the Watkins analysis to the Grandparent Visitation Statute, the Court in Moriarty held:
Thus, in every case in which visitation is denied, the grandparents bear the burden of establishing by a preponderance of the evidence that visitation is necessary to avoid harm to the child. The grandparents' evidence can be expert or factual. For example, they may rely on the death of a parent or the breakup of the child's home through divorce or separation. In fact, many of the fifty grandparent visitation statutes specifically recognize the potential for harm when a parent has died or a family breakup has occurred and visitation is denied. In addition, the termination of a long-standing relationship between the grandparents and the child, with expert testimony assessing the effect of those circumstances, could form the basis for a finding of harm. See e.g., Roth, supra, 789 A.2d at 445 (noting that proof of substantial, emotional ties between child and nonparent could result in harm to child if contact with that person is denied or curtailed); Blixt, supra, 774 N.E.2d at 1060 (observing that "the requirement of significant harm presupposes proof of a showing of a significant preexisting relationship between the grandparent and the child"). The possibilities are as varied as the factual scenarios presented.
If the court agrees that the potential for harm has been shown, the presumption in favor of parental decision making will be deemed overcome. At that point, the parent must offer a visitation schedule. If the grandparents are satisfied, that *528 will be the end of the inquiry. If not, a second step will be undertakenan assessment of the schedule. The presumption in favor of parental decision making having been overcome, the court should approve a schedule that it finds is in the child's best interest, based on the application of the statutory factors. See N.J.S.A. 9:2-7.1 (listing statutory factors); Watkins, supra, 163 N.J. at 254, 748 A.2d 558 (noting that once "exceptional circumstances" are found, court should award custody based on child's best interests).
[177 N.J. at 117-18, 827 A.2d 203.]
In Moriarty, the Court approved a trial court's decision to permit grandparent visitation, where the children's mother had died, and the grandparents had spent considerable time with the grandchildren and had a closer than usual relationship with the grandchildren, due to the mother's drug problems prior to her death. Id. at 118, 827 A.2d 203. According to the Court, the trial court's "most critical findings" were "`the death of the mother and the fact that it is extremely important that the children continue a bond with their mother's side of the family. And the experts all agreed on that.'" Id. at 121, 827 A.2d 203. In other words "visitation with the grandparents was necessary to avoid harm to the children." Id. at 122, 827 A.2d 203.
On this appeal, plaintiff contends that the trial court went too far in holding that the GVS can never be applied to an intact family, but plaintiff also appears to contend that we should disregard the holding of Moriarty that, to invoke the statute, plaintiff must make a showing of harm to the children. Plaintiff urges that we should remand this matter to the trial court to permit discovery and an evidentiary hearing. But plaintiff's brief is unclear as to what issues that discovery and hearing would address. Plaintiff's motion submissions were devoid of evidence of harm to the children. Likewise, her appellate brief fails to specify any concrete harm the children are suffering, or will suffer, by virtue of the lack of visitation.
While we do not denigrate the value of a loving relationship with grandparents, the denial of which might result in some harm to any child, we conclude that the type of harm to which Moriarty referred must be something more substantial. It must be the kind of significant harm that Watkins recognized as justifying State intervention in the parent-child relationship. For example, in Moriarty, the Court stated that the trial court's "most critical findings" in support of visitation were the death of the children's mother and the children's consequent need to "continue a bond with their mother's side of the family." 177 N.J. at 121, 827 A.2d 203. Absent the requirement of some special need for continued contact, any grandparent could impose the economic and emotional burden of litigation on fit parents, and on the children themselves, merely by alleging an ordinary grandparent-child relationship and its unwanted termination.
Defendants, citing fear that plaintiff will renew her application in the future, urge us to adopt the trial court's per se rule that the Act can never be applied to an intact family. Moriarty precludes such a narrow construction of the Act. Moriarty, supra, 177 N.J. at 117, 827 A.2d 203.
Although we do not agree with defendants' contention, we appreciate the need to avoid imposing expensive and time-consuming discovery and other litigation costs on parents in every case in which grandparents seek visitation. Such was surely not the Court's intent in Moriarty. The economic and emotional cost of litigation *529 can represent an enormous intrusion into a family's life:
It must be recognized, of course, that a domestic relations proceeding in and of itself can constitute state intervention that is so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated ...
[Troxel, supra, 530 U.S. at 101, 120 S.Ct. 2054 (Kennedy, J., dissenting); approved by the plurality, 530 U.S. at 73, 120 S.Ct. 2054.]
See also Rideout v. Riendeau, 761 A.2d 291, 303 & n. 18 (Me.2000) (imposing strict preliminary standing requirements on grandparents seeking visitation, and recognizing that custody litigation is psychologically damaging to children and parents); Blixt v. Blixt, 437 Mass. 649, 774 N.E.2d 1052, 1065-66 (2002), cert. denied, 537 U.S. 1189, 123 S.Ct. 1259, 154 L.Ed.2d 1022 (2003) (imposing heightened pleading requirements in grandparent visitation cases). In order to avoid imposing an unnecessary and unconstitutional burden on fit parents who are exercising their judgment concerning the raising of their children, trial courts must focus first on whether the grandparent has made a clear and specific allegation of concrete harm to the children. Mere general and conclusory allegations of harm, which are all that plaintiff presented in this case, are insufficient. As we held in Mizrahi v. Cannon, 375 N.J.Super. 221, 234, 867 A.2d 490 (App.Div.2005):
In our judgment, grandparents seeking visitation under N.J.S.A. 9:2-7.1 in the wake of Moriarty must establish that denying visitation would wreak a particular identifiable harm, specific to the child, to justify interference with a parent's fundamental due process right to raise a child free from judicial interference and supervision. Conclusory, generic items, such as "loss of potentially happy memories," are not a sufficient basis to warrant such an intrusion into a parent's decision making.
Where, as here, the plaintiff neither pleads nor presents proof of any concrete harm to the children, the complaint is properly dismissed. The basis for the dismissal, however, is not that the GVS is unconstitutional as applied, but that the plaintiff has failed to meet even the threshold requirement of the statute, as the Supreme Court has construed it in Moriarty, supra.
Further, since harm of the type recognized in Moriarty generally rests on the existence of an unusually close relationship between the grandparent and the child, or on traumatic circumstances such as a parent's death, it should not be necessary for the grandparent seeking visitation to obtain discovery in order to be able to plead specific facts to support his or her claim of harm to the children. Those facts should already be within the grandparent's knowledge. Consequently, in this case, we find no merit in plaintiff's claim that this case should be remanded to permit discovery.
Roth v. Weston, 259 Conn. 202, 789 A.2d 431 (2002), and Blixt v. Blixt, supra, both of which were cited in Moriarty, provide some support for our approach to the issues of pleading and discovery. Moriarty cited these cases in support of the proposition that "a long-standing relationship between the grandparents and the child, with expert testimony assessing the effect of those circumstances, could form the basis for a finding of harm." Moriarty, supra, 177 N.J. at 117-18, 827 A.2d 203. In reading these cases we find further content for the term "long-standing relationship."
*530 Roth explicitly stated that the "long-standing relationship" must be of the type that would give the grandparents the status of de facto parents. Roth, supra, 789 A.2d at 443 ("Accordingly, any third party... including a grandparent ... seeking visitation must allege and establish a parent-like relationship as a jurisdictional threshold in order both to pass constitutional muster and to be consistent with the legislative intent.") The court gave further content to the legal standard as follows:
We can envision circumstances in which a nonparent and a child have developed such substantial emotional ties that the denial of visitation could cause serious and immediate harm to that child. For instance, when a person has acted in a parental-type capacity for an extended period of time, becoming an integral part of the child's regular routine, that child could suffer serious harm should contact with that person be denied or so limited as to seriously disrupt that relationship. Thus proof of a close and substantial relationship and proof of real and significant harm should visitation be denied are, in effect, two sides of the same coin. Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied.
[Id. at 445.]
While we do not understand Moriarty to necessarily require a de facto parental relationship, we believe the foregoing discussion from Roth to be consistent with Moriarty and consistent with common sense.
Blixt, while not requiring de facto parental status as a prerequisite, notes that
[T]o succeed, the grandparents must allege and prove that the failure to grant visitation will cause the child significant harm by adversely affecting the child's health, safety, or welfare. The requirement of significant harm presupposes proof of a showing of a significant preexisting relationship between the grandparent and the child.... These standards do not require de facto parental status on the part of the grandparents, but the standards are consistent with our cases concerning de facto parents.
[Blixt, supra, 774 N.E.2d at 1060-61.]
Further, Blixt set strict pleading requirements for grandparent visitation cases, citing language from Troxel recognizing that the burden of litigating a visitation case can be disruptive of the parent-child relationship and can unconstitutionally burden the parents' rights. Id. at 1065-66. Hence, Blixt held that notice pleading was insufficient in grandparent visitation cases. "Before a parent or parents are called upon to litigate fully a grandparent visitation complaint, with all the attendant stress and expense, the grandparent or grandparents should make an initial showing that satisfies a judge that the burden of proof ... can be met." Therefore, "any complaint filed under the statute should be detailed and verified or be accompanied by a detailed and verified affidavit setting out the factual basis relied on by the plaintiffs to justify relief." Id. at 1066.
We perceive this approach to be reasonable, and rooted in the same concerns that activated our decision in Wilde v. Wilde, 341 N.J.Super. 381, 397, 775 A.2d 535 (App.Div.2001), where we required that grandparents attempt to amicably resolve visitation disputes before initiating litigation.[2] As Troxel recognized, litigation itself *531 can be an economic and emotional threat to a family. Troxel v. Granville, supra, 530 U.S. at 73, 101, 120 S.Ct. at 2064, 2079, 147 L.Ed.2d at 61, 78. When grandparents seek to interject themselves into parental decision-making by using the courts, that threat can take on constitutional dimensions. The process of discovery can impose expense, inconvenience and trauma. Absent special circumstances, parents who decide to limit or even preclude grandparent visitation should not be faced with court-ordered psychological examinations and other intrusive measures at the grandparents' behest. We therefore believe that grandparents seeking visitation must be held to a higher standard than the generalities normally acceptable as notice pleading.
In this case, of course, the plaintiff's complaint did not even meet the very low standard of notice pleading as it made no mention of harm to the children, an essential element of a claim under the GVS. We also note certain additional undisputed facts that militate against court intervention in this case. There is no dispute that the parties have had a contentious relationship since before the children were born. As a result, defendants have always limited plaintiff's opportunities to visit with the childrenunfairly in her view and with good reason in their view. But in any event, plaintiff has never had the kind of close and constant contact with the grandchildren the disruption of which might be expected to result in particular harm. The fact that these parents are an "intact family" is not dispositive; court-mandated grandparent visitation may be an equally unconstitutional imposition on a divorced couple or a single parent. But the absence of the kind of traumatic circumstances present in Moriarty is an additional factor that must be considered. There is no evidence here that the grandparent served as a buffer for the children against family tragedy or that the children have an ongoing emotional need for grandparent visitation because of traumatic circumstances.
Because we find that the plaintiff neither pled nor presented evidence that the cessation of visitation would cause particular harm to the children, the complaint was properly dismissed.
Affirmed.
NOTES
[1] In Troxel v. Granville, 530 U.S. 57, 63, 120 S.Ct. 2054, 2059, 147 L.Ed.2d 49, 55 (2000), the Supreme Court of the United States cast doubt on the validity of grandparent visitation laws when it affirmed a decision of the Supreme Court of Washington invalidating a visitation statute that by its terms permitted any person to petition for visitation at any time. But Troxel did not reach the issue of "whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation." Troxel, supra, 530 U.S. at 73, 120 S.Ct. 2054.
[2] The trial court did not address defendants' alternate contention, that plaintiff did not comply with Wilde by attempting to amicably resolve the visitation issue before she threatened litigation and filed her lawsuit. We likewise find it unnecessary to address the issue, because plaintiff's complaint was clearly inadequate under the GVS and the trial judge properly focused first on whether plaintiff had stated a cause of action under the statute.