**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1518-20

M.D.[1] and N.D,

    Plaintiffs-Respondents,

v.

V.H. f/k/a V.V.-D.,

    Defendant-Appellant.

_____

> Argued October 26, 2021 – Decided December 13, 2021
>
> Before Judges Sumners and Firko.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FD-03-0879-20.
>
> Natalia Teper argued the cause for appellant (Teper Law Firm, LLC, attorneys; Natalia Teper, on the briefs).
>
> Kathleen Pasquarello Stockton argued the cause for respondents (Stockton Family Law, LLC, attorneys;

---

[1] We use initials to protect the identity and confidentiality of the minor child and parties.

Kathleen Pasquarello Stockton and Jessica A. Beardsley, on the brief).

PER CURIAM

Defendant V.H. (Vicky) appeals the Family Part's order awarding visitation rights of her then seven-year-old daughter G.D. (Gail) to plaintiffs M.D. (Mindy) and N.D. (Nathaniel) (collectively "plaintiffs" or "grandparents"), Gail's paternal grandparents, under the Grandparent Visitation Act (the Act), N.J.S.A. 9:2-7.1. Vicky also appeals the court's denial of her request for counsel fees. For the reasons set forth below, we affirm the order denying counsel fees, but reverse and remand the order for visitation.

I

The trial court's plenary hearing revealed the following background regarding the parties' relationship and the grandparents' relationship with Gail. Vicky and grandparents' son N.D., III (Nate) began dating in their senior year of high school. Some eight years later, in 2013, while unmarried, they had Gail.

Two months after Gail's birth, Vicky and Nate married. To help the couple in caring for Gail, Mindy and Vicky's father took turns babysitting Gail for approximately fourteen to fifteen months. In November 2014, Vicky and Nate separated after a domestic dispute over whether Gail should start daycare. This led to the grandparents babysitting Gail twice per week until she was two-and-

a-half years old.  The arrangement discontinued at Vicky's insistence when Nate filed for divorce.

In January 2016, the court granted Vicky custody of Gail.  Nate was granted supervised visitation under Vicky's supervision because of his substance abuse.  During Nate's visits, the grandparents would occasionally accompany him without Vicky's permission.

In September 2016, the court denied Nate's request to have Mindy replace Vicky as supervisor during his visits with Gail.  Approximately one month later, a protective order was filed suspending Nate's visitation "in its entirety" because Nate had a positive drug test.

In May 2017, Nate and Vicky's judgment of divorce was finalized.  Vicky was awarded primary legal custodian of Gail with "all legal authority to make both major and minor decisions in [her] life," due to Nate's "failure . . . to comply with court orders, his substance abuse issues[,] and his failure to appear at trial." The court declined to award Vicky sole legal custody, finding it was in Gail's best interest for "[both] parents to have a modified form of joint legal custody."

Two years later, in May 2019, Nate tragically died from a drug overdose. After his death, as had been the case during and after the divorce, the

grandparents continued to send Gail cards and gifts for her birthdays and holidays and contacted Vicky about visiting Gail.

In February 2020, the grandparents filed an application under the Act for visitation with Gail. Almost a year later, on January 22, 2021, following a plenary hearing on December 8 and 20, 2020, the court issued an order granting the grandparents visitation. As noted, Gail was seven years old at the time.

The trial court explained its reasoning in a written decision. After noting that the grandparents gave credible testimony, the court found Vicky to be "a truthful witness in that she believe[d] what she [said]" but "[did] not find [her] to be a credible witness given the posture she [took] in this litigation." The court stressed that Vicky "remain[ed] extremely angry at [the] [g]randparents for their support of [Nate] in the divorce and their son's substance abuse issues and ultimate death." The court determined Vicky's "anger prevent[ed] her from rationally considering what [was] in [her daughter's] best interest." The court then considered "three distinct time frames[:] (a) . . . when the parties were . . . an intact family; (b) . . . during the divorce litigation; and (c) . . . after [Nate's] death." Without detailing the court's specific findings, in sum, it determined the parties' relationship eroded because following the divorce and continuing after

4

Nate's death, Vicky refused to allow the grandparents to have a relationship with Gail.

The court next addressed the Act's eight statutory factors:

> (1) The relationship between the child and the applicant;
>
> (2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;
>
> (3) The time which has elapsed since the child last had contact with the applicant;
>
> (4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
>
> (5) If the parents are divorced or separated, the time sharing arrangement which exists between the parents with regard to the child;
>
> (6) The good faith of the applicant in filing the application;
>
> (7) Any history of physical, emotional or sexual abuse or neglect by the applicant; and
>
> (8) Any other factor relevant to the best interests of the child.
>
> [N.J.S.A. 9:2-7.1(b).]

The court found that "all but factor [three] are either in favor of [g]randparents or not applicable." Thus, "[b]ased upon the totality of the circumstances . . .

5

[g]randparents . . . met their initial burden of establishing that they are sufficiently bonded with [Gail] and that [she] would be harmed in the event that the [c]ourt [did] not provide for specific grandparent time over [Vicky's] objection." The trial court ordered that "[g]randparents be given one weekend per month with [Gail]" with the intention that "it would be appropriate to ease into [visitations] rather than starting with a full weekend."

As for Vicky's motion for counsel fees under Rule 4:42-9, the court denied the request because she did not submit her attorney's billing records. In addition, "the [c]ourt [did] not find that [g]randparents . . . acted in bad faith during the time period leading up to the filing of their complaint or [thereafter]."

Two weeks after granting grandparents visitation and denying Vicky's request for counsel fees, the court denied Vicky's motion to stay. Her subsequent applications for permission to file an emergent motion with our court and the Supreme Court were denied. Hence, the grandparents have been visiting with Gail while this appeal has been pending.

II

Vicky's first argument on appeal is that the trial court erred in awarding the paternal grandparents visitation with Gail. She specifically contends that under Moriarty v. Bradt, 177 N.J. 84 (2003), the grandparents failed to meet

6

their burden to prove, by a preponderance of evidence, that their visitation was necessary to avoid harm to Gail. Vicky contends the court "misapplied the law, which does not require finding what is in the best interest of the child, but rather [the] legal standard requires that once the harm is proved, then the issue of an appropriate visitation needs to be addressed based on the child's best interest."

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. An appellate court should intervene only when convinced the trial court's factual findings and legal conclusions "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Furthermore, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," and this court reviews questions of law de novo.

A-1518-20

Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995) (citations omitted).

In a grandparent's complaint seeking visitation, he or she must first make "a clear and specific allegation of concrete harm to the children." Daniels v. Daniels, 381 N.J. Super. 286, 294 (App. Div. 2005). Such harm must be "significant" enough to "justify[] State intervention in the parent-child relationship." Id. at 293. "Mere general and conclusory allegations of harm. . .are insufficient." Id. at 294. The purpose behind this heightened pleading requirement is "to avoid imposing an unnecessary and unconstitutional burden on fit parents who are exercising their judgment concerning the raising of their children." Ibid. Otherwise, "any grandparent could impose the economic and emotional burden of litigation on fit parents, and on the children themselves, merely by alleging an ordinary grandparent-child relationship and its unwanted termination." Id. at 293.

Under the Act, a "grandparent seeking . . . visitation must prove by a preponderance of the evidence that denial of [the visitation] would result in harm to the child." Major v. Maguire, 224 N.J. 1, 7 (2016) (citing Moriarty, 177 N.J. at 117-118). "Substantively, it is a 'heavy burden.'" Slawinski v. Nicholas, 448 N.J. Super. 25, 34 (App. Div. 2016) (quoting Major, 224 N.J. at 18). Only "[i]f

. . . the potential for harm has been shown [can] the presumption in favor of parental decision making . . . be deemed overcome." Id. at 33 (quoting Moriarty, 177 N.J. at 117).

In Slawinski, we described the level of harm that a grandparent must demonstrate before a court is required to determine whether visitation is in a child's best interest. We stated:

> [P]roof of harm involves a greater showing than simply the best interests of the child. [Moriarty], 177 N.J. at 116 (stating that a dispute between a "fit custodial parent and the child's grandparent is not a contest between equals[,]" consequently "the best interest standard, which is the tiebreaker between fit parents, is inapplicable"). . . . The harm to the grandchild must be "a particular identifiable harm, specific to the child." Mizrahi v. Cannon, 375 N.J. Super. 221, 234 (App. Div. 2005). It "generally rests on the existence of an unusually close relationship between the grandparent and the child, or on traumatic circumstances such as a parent's death." [Daniels, 381 N.J. Super. at 294]. By contrast, missed opportunities for creating "happy memories" do not suffice. Mizrahi, 375 N.J. Super. at 234. Only after the grandparent vaults the proof-of-harm threshold will the court apply a best-interests analysis to resolve disputes over visitation details. Moriarty, 177 N.J. at 117.
>
> [Slawinski, 448 N.J. Super. at 34 (second alteration in original).]

The Moriarty Court provided the following examples of the type of supporting evidence that grandparents can produce to establish harm to a child:

The grandparents' evidence can be expert or factual. For example, they may rely on the death of a parent or the breakup of the child's home through divorce or separation. . . . In addition, the termination of a longstanding relationship between the grandparents and the child, with expert testimony assessing the effect of those circumstances, could form the basis for a finding of harm.

[177 N.J. at 117.]

Where a grandparent cannot make a threshold showing of harm, the complaint should be dismissed. A trial court "should not hesitate to dismiss an action without conducting a full trial if the grandparents cannot sustain their burden to make the required showing of harm." Major, 224 N.J. at 25. Under those circumstances, "a court may dismiss . . . by summary judgment under Rule 4:46-2(c) . . . [so as] not [to] prolong litigation that is clearly meritless." Ibid.

Such harm was present in R.K., where the grandparents lived in the same house with their granddaughter for six years while the girl's mother battled drug addiction, during which time the child's younger sibling tragically died. 434 N.J. Super. 113, 123 (App. Div. 2014). After the child's mother died, her father obtained full custody and attempted to limit her contact with the grandparents. Id. at 127-28. When the grandparents sued, the trial court dismissed their complaint on the basis that the proofs "establish[ed] no more than a general, unsubstantiated allegation of harm." Id. at 142. We reversed and remanded for

10

the creation of a visitation schedule, reasoning the granddaughter "not only had a long and close relationship with her grandparents during her formative years, but she actually resided with her grandparents for an extensive period of time after her parents divorced and after the tragic death of her younger sibling." Id. at 146. Additionally, her "association with her grandparents came to an abrupt end as a result of her mother's death." Ibid.

Once a grandparent makes a threshold showing of that visitation is necessary to prevent harm to the grandchild, the presumption in favor of parental decision-making is overcome and the best interest standard applies. Id. at 150. The trial court must then consider the noted eight statutory factors under N.J.S.A. 9:2-7.1(b). Ibid.

Applying these guiding principles here, we conclude the trial court did not identify the factual basis for its finding "that [g]randparents have met their prima facie burden of establishing harm to [Gail]," and failed to articulate what the harm was and how it manifested in her. The court thus made a conclusion without any reasoning. In accordance with Rule 1:7-4(a), "the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980). "[N]aked conclusions do not satisfy the purpose of R[ule] 1:7-4." Ibid. Consequently, we

remand for the court to provide a statement of facts and legal conclusions regarding the harm to Gail and how it was manifested by not visiting her grandparents. We do not disturb the court's consideration of the eight statutory factors under N.J.S.A. 9:2-7.1(b), as the court's findings in that regard are supported by credible evidence in the record. Of course, if the court finds on remand there are insufficient facts establishing Gail is harmed by not visiting with her grandparents, it must dismiss their complaint.

That said, given the fact that the grandparents have been visiting with Gail for the past ten months during the pendency of this appeal, the trial court has the discretion to grant an application by the parties to reopen the record.[2] See e.g., State v. Cullen, 428 N.J. Super. 107, 111-12 (App. Div. 2012) (holding trial court has discretion on whether to reopen the record, but "consideration should be given to the prejudice to the opposing party.") (citing State v. Menke, 25 N.J. 66, 71 (1957)); State v. Menke, 44 N.J. Super. 1, 7 (App. Div. 1957) (concluding a defendant should not be "precluded from offering such rebuttal proofs as he might choose" that are responsive and admissible); Ibrahim v. Aziz, 402 N.J.

---

[2] The court may also want to consider the appointment of a guardian ad litem or an expert witness to aid in its determination. See R. 5:8B. We, of course, give no direction that such an appointment be made, but leave it to the court's discretion.

Super. 205, 214 (App. Div. 2008) (reversing and remanding "so the trial court c[ould] reevaluate th[e] record or in its discretion reopen the record for further evidence."). This may be appropriate in order to consider Gail's best interest.

III

Although we have remanded this matter for the court to articulate the facts and law that establish Gail is harmed by not visiting her grandparents, we address Vicky's final contention on appeal that she was entitled to counsel fees. Regardless of the outcome on remand, counsel fees are not warranted.

An award of counsel fees in matrimonial matters is discretionary. Williams v. Williams, 59 N.J. 229, 233 (1971). A trial court abuses its discretion only "if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Rule 4:42-9(a)(1) permits the trial court to award counsel fees in a family action pursuant to Rule 5:3-5(c). A trial court must consider the following factors when deciding whether to award counsel fees:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to

contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

Vicky contends the trial court erred in not awarding her legal fees because the grandparents' complaint seeking visitation of Gail was "unreasonable" and an exercise in "bad faith" that "forced [her] to engage in litigation[,] which was an unnecessary economic and emotional burden on her." Citing N.J.S.A. 2A:34-23, she contends a court must "consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." Vicky maintains the "[t]rial [c]ourt erroneously declared that [she] . . . failed to provide [the trial] [c]ourt with the [c]ertification of [s]ervices, when she ha[d] in fact done so by filing [c]ertification of [c]ounsel [f]ees." She contends that since Gail's grandparents are "comfortable financially and can afford to engage in litigation," they can "contribute [to, if not [entirely] pay for [her] legal fees."

To the contrary, we agree with the court that the record clearly reflects the grandparents did not act "in bad faith during the time period prior to filing" their application for visitation. They had a relationship with their granddaughter, beginning at her birth, that was curtailed, and they properly exercised their rights under the Act to rekindle that bond. Irrespective of the outcome of this litigation, there was nothing egregious about their actions that warrant their responsibility, in part or in full, for Vicky's counsel fees. We see no abuse of discretion by the court's decision not to award counsel fees.

We affirm in part, and reverse and remand in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1518-20