**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1473-20

M.B.,

      Plaintiff-Appellant,

v.

D.L.,

      Defendant-Respondent.

_____

         Argued April 4, 2022 – Decided June 22, 2022

         Before Judges Rose and Enright.

         On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-2412-20.

         M.B., appellant, argued the cause pro se.

         Maria A. Giammona argued the cause for respondent.

PER CURIAM

Plaintiff M.B. (Matt)[1] appeals from a December 24, 2020 order denying his application to compel visitation under the Grandparent Visitation Statute (GVS), N.J.S.A. 9:2-7.1.  He also challenges a June 17, 2021 order denying his reconsideration motion and his motion to vacate.  We affirm.

I.

Matt is the father of defendant D.L. (Dana).  Dana and her husband, M.L. (Mark), reside in Essex Fells with their two children, G.L. (George) and Z.L. (Zeke), now ten and eight years old, respectively.  Matt resides in Vermont, approximately 300 miles from Dana's home.

Following George's birth in 2012, Matt periodically visited his grandsons in New Jersey.  One of the boys also visited with Matt in Vermont on one occasion.  During his visits, Matt engaged in various activities with his grandchildren, including cooking meals, taking them out to dinner, reading to them, and helping George board a boat for the first time.

The parties dispute how often Matt's visits occurred.  He alleges he visited the boys on eighteen to twenty-one occasions, but Dana contends Matt had seven visits with the boys and one additional visit with one child.  The visits occurred

---

[1]  We refer to the adult parties and children by initials and fictitious names to protect their privacy.

A-1473-20

in New Jersey, except for one time when Matt saw one of the grandchildren in Vermont. The boys did not stay with Matt overnight and he never served as their primary caretaker.

Over time, the relationship between Matt and Mark soured, so Mark stopped accompanying Dana and the boys during visits. Eventually, the relationship between Matt and Dana also deteriorated, but for a brief period, Dana allowed Matt to visit the boys outside her presence.

In December 2019, Dana notified Matt via email that George "wishe[d] to no longer see" Matt because he "ma[d]e [George] feel uncomfortable." Zeke, then five years old, visited with Matt once more, but subsequently told Dana he did not want to see Matt without George. All visits between Matt and the boys stopped in December 2019.

In February 2020, Matt filed a complaint under the GVS to compel visitation with his grandsons. Several weeks later, Dana filed a counterclaim and moved to dismiss the complaint; she also sought an award of counsel fees. Alternatively, she requested permission to file an untimely answer to the complaint. In response, Matt sought permission to file a non-conforming

A-1473-20

complaint and to have the matter designated as "complex," pursuant to Rule 5:5-7(c).[2]

Judge Philip J. Degnan conducted a summary proceeding via video conference on August 12, 2020. The next day, he entered an order denying Dana's motion to dismiss. He also relisted the matter for a virtual summary hearing to address Matt's request for grandparent visitation.[3] The August 13 order does not reflect any ruling on Dana's request for counsel fees nor Matt's application to place the matter on the complex track.[4]

Prior to the hearing, Matt submitted supplemental briefing and renewed his request to have the case designated as complex. He also sought discovery and asked the court to order mediation and an expert evaluation. In support of his request for an evaluation, Matt submitted a letter from Dr. Mathias R.

---

[2] Under this Rule, a non-dissolution case is "presumed to be summary and non-complex." A Family Part judge has discretion to place a case on the complex track. Ibid. Complex cases are "exceptional cases that cannot be heard in a summary manner." Ibid. A Family Part judge "may assign [a] case to the complex track based only on a specific finding that discovery, expert evaluations, extended trial time or another material complexity requires such an assignment." Ibid.

[3] It appears the August 12 and subsequent hearings were ordered to proceed remotely due to the ongoing COVID-19 pandemic.

[4] We were not provided with a transcript of the August 12 hearing, so we are unaware if the judge addressed these outstanding issues at that hearing.

A-1473-20

Hagovsky, who offered to conduct an evaluation for the purpose of: "[e]xploring the genesis of the request by [George] to terminate contact"; "[e]xploring the basis for [Zeke] continuing to request contact"; and "[i]nvestigating the relationship history of the parents with the grandfather," among other objectives. Dr. Hagovsky did not speak with Dana or the children before submitting the letter; instead, he reviewed the parties' pleadings as well as the certifications they filed in March and May 2020.

The virtual hearing proceeded on December 9, 2020. The record reflects both parties and Dana's husband testified at the hearing.[5] One week later, Judge Degnan rendered an oral opinion, denying Matt's requests to: assign the matter to a complex track; compel mediation; permit discovery; and compel grandparent visitation. The judge credited Dana's testimony regarding the nature of Matt's relationship with his grandsons, George's decision to stop

---

[5] We were not provided with a transcript from the December 9 hearing. See R. 2:6-1(a)(1)(I) (requiring the appellant to include in the appendix on appeal "such other parts of the record . . . as are essential to the proper consideration of the issues, including such parts as the appellant should reasonably assume will be relied on by the respondent in meeting the issues raised"). Although we are not "obliged to attempt review of an issue when the relevant portions of the record are not included," Community Hospital Group, Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (citations omitted), in the interest of addressing the issues before us, we have opted to address plaintiff's arguments on the merits.

A-1473-20

visiting with Matt, and the decision Dana made with her husband to discontinue visits after concluding visitation "was not in the children's best interest." In denying Matt's application, Judge Degnan found Matt "failed to articulate harm that is specific to both of the grandchildren as required by law." Further, the judge concluded

> the [parties'] disagreement does not amount to a genuine and substantial factual dispute.
>
> . . . .
>
> While in no way diminishing the importance of a grandparent's role in a child's life, even plaintiff's version of the relationship reveals that over the course of their lives, . . . plaintiff developed what can be characterized as an ordinary relationship between grandparent and grandchildren. . . . He was never the caretaker of the children. . . . [I]n fact, plaintiff never had the children overnight.
>
> It's the court's obligation to weigh the substantialness of the factual disputes between the parties against plaintiff's procedural right to engage in discovery and present evidence to resolve those disputes. Here the court finds . . . the lack of factual dispute and plaintiff's inability to make the required showing of harm . . . outweigh the curtailment of the procedural rights that comes with declining to hold a full evidentiary trial.
>
> . . . .
>
> Overall, the court finds . . . plaintiff has failed to articulate a specific harm to a degree that the court

6

should consider ordering grandparent visitation. Ultimately, the evidence . . . supports the finding that this was an ordinary grandparent/grandchild relationship that was based upon periodic visits that were likely meaningful to all involved but it is not a special relationship contemplated in the case law in which grandparent visitation [is] ordered.

. . . .

Additionally, in looking at the harms that are identified by the plaintiff, the court finds that they are not specific or identifiable. Here plaintiff claims . . . three types of harm. First, plaintiff claims that the failure to rule in his favor compounded with the recent loss of the children's paternal grandfather will constitute emotional trauma, but there's no significant evidence that the passing of the other grandfather was a traumatic event for the children or that there would be such connection here.

Second, plaintiff claims that the potential continuance of a relationship with one child but not the other would produce disparate outcomes for the children. This, too, does not appear to be an issue. As of this point the [boys' parents] have decided that neither child should visit with [plaintiff].

Third, plaintiff claims that the children will be harmed if they are permitted to make a life-altering decision such as the termination of the grandparent/grandchild relationship while they are still as young as they are. Again, this is speculative and likely factually incorrect given that the [boys' parents] testified that this was their decision, albeit based on the input from the children. . . .

A-1473-20

Ultimately, these alleged harms do not constitute a basis to override the [parents'] constitutional right to autonomously raise their children as they see fit. So, for those reasons the court is . . . denying the application for grandparent visitation over the parents' objection.

Regarding Matt's request to place the case on a complex litigation track, Judge Degnan further determined Matt had the "burden to demonstrate why the potential evidence in this case is exceptionally difficult or intricate." The judge found Matt failed to meet that burden, the case was not "particularly complicated," and it could be resolved by way of a summary proceeding. Citing Major v. Maguire,[6] the judge concluded "the burdens on the privacy and resources of a family [as they exist in complex grandparent visitation cases] are neither necessary nor appropriate here."

Further, the judge denied Matt's request for mediation, concluding, "[t]he parents have made their position clear . . . and there's been no inclination that will change. Moreover, the lack of specific harm . . . would not warrant [such] relief." Similarly, the judge denied Matt's request for an expert evaluation, finding Dr. Hagovsky's letter did not support an evaluation because it did "not contain an opinion on the issue of harm but rather identifie[d] categories of

---

[6] 224 N.J. 1 (2016).

information that might require further exploration. The factors identified [by Dr. Hagovsky] go largely to . . . the nature of the relationship about which the plaintiff is already well aware." The judge issued a conforming order on December 24, 2020.

In February 2021, Matt moved for reconsideration of the December 24 order, and moved to vacate the same order under Rule 4:50-1(f).[7] Contemporaneously, he filed a notice of appeal. In April 2021, we granted Matt's request for a remand to allow Judge Degnan to consider Matt's pending motions but did so without passing judgment on the timeliness of Matt's reconsideration motion.

Although Judge Degnan found Matt was in court when his initial motion for grandparent visitation was denied on December 16, 2020, and that Matt "receive[d] a copy of the resulting December 24, 2020 order directly from the court," the judge chose not to deny the reconsideration motion on timeliness grounds. Instead, he considered the merits of Matt's reconsideration and vacatur motions.

---

[7] Rule 4:50-1(f) provides a party may be relieved from a final judgment or order for "any reason justifying relief from the operation of the judgment or order."

Judge Degnan denied both motions on June 17, 2021, finding Matt had "not identified an error of the magnitude that would require reconsideration" and that Matt failed to show the December 24 order flowed from "a palpably incorrect or irrational basis." Likewise, the judge concluded Matt was not entitled to relief under Rule 4:50-1 for the reasons reconsideration was unwarranted. Also, the judge found Matt failed to advance an argument under Rule 4:50-1(f) to support his vacatur motion and it appeared Matt relied on the Rule "as a way to avoid the timeliness issue raised by [his adversary]."

## II.

On appeal, Matt argues as follows:

> POINT I - The Process Before the Trial Court was Incorrectly Limited[,] Leading to an Unfair Denial of Grandparent Visitation.

To support this contention, Matt further argues:

> A. Defendant[] filed no answer, leaving Plaintiff's complaint unopposed;
>
> B. The Court's denial of the Motion to Dismiss was a prima facie showing for grand[]parent visitation if proven;
>
> C. The Court's denial of the Motion to Dismiss confirms the adequacy of the alleged harm to [plaintiff's grandsons;]
>
> D. The trial court did not afford Plaintiff due process;

10

E.  There is good reason to characterize this matter as complex.

These arguments are unavailing.

Our limited scope of review of a trial court's findings is well established. See Cesare v. Cesare, 154 N.J. 394, 411 (1998).  We accord deference to the family courts due to their "special jurisdiction and expertise" in the area of family law, and we will not disturb the court's factual findings and legal conclusions "unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Id. at 412-13 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

Additionally, a trial court's decision to deny a motion for reconsideration will be upheld on appeal unless the motion court's decision was an abuse of discretion.  Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016) (citing Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002)).  Also, a "trial court's determination under [Rule 4:50-1] warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion."  U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).  An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an

11

impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. INS, 779 F.2d 1260, 1265 (7th Cir. 1985)). On the other hand, a judge's purely legal decisions are subject to our de novo review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Governed by these principles, we discern no reason to disturb either of the challenged orders. We add the following comments.

The GVS "confers on a child's grandparent . . . standing to file an action for an order compelling visitation[,]" Major, 224 N.J. at 13, and "provides the framework for grandparent . . . visitation when visitation is proven to be 'in the best interests of the child[,]'" N.J. Div. of Youth & Fam. Servs. v. S.S., 187 N.J. 556, 562 (2006) (quoting N.J.S.A. 9:2-7.1(a)). Although the GVS permits the court to order visitation with a grandparent, we have recognized "by virtue of a fit parent's fundamental due process right to raise his or her children, the parent is entitled to a presumption that he or she acts in the best interests of the child, and that the parent's determination whether to permit visitation is entitled to 'special weight.'" Major, 224 N.J. at 15 (quoting Troxel v. Granville, 530 U.S. 57, 67-69 (2000)).

A "grandparent seeking . . . visitation [under the GVS] must prove by a preponderance of the evidence that denial of [the visitation] would result in harm to the child." Id. at 7 (citing Moriarty v. Bradt, 177 N.J. 84, 117-18 (2003)). "Substantively, it is a 'heavy burden.'" Slawinski v. Nicholas, 448 N.J. Super. 25, 34 (App. Div. 2016) (quoting Major, 224 N.J. at 18). Only "[i]f . . . the potential for harm has been shown [can] the presumption in favor of parental decision making . . . be deemed overcome." Id. at 33 (quoting Moriarty, 177 N.J. at 117). Thus, the grandparent must make "a clear and specific allegation of concrete harm to the children." Daniels v. Daniels, 381 N.J. Super. 286, 294 (App. Div. 2005).

The alleged harm must be "significant" enough to "justify[] State intervention in the parent-child relationship." Id. at 293. "Mere general and conclusory allegations of harm . . . are insufficient." Id. at 294. The purpose behind this heightened pleading requirement is "to avoid imposing an unnecessary and unconstitutional burden on fit parents who are exercising their judgment concerning the raising of their children[.]" Ibid. Otherwise, "any grandparent could impose the economic and emotional burden of litigation on fit parents, and on the children themselves, merely by alleging an ordinary grandparent-child relationship and its unwanted termination." Id. at 293.

13

In Slawinski, we described the level of harm that a grandparent must demonstrate before a court is required to determine whether visitation is in a child's best interest. We stated:

> [P]roof of harm involves a greater showing than simply the best interests of the child. [Moriarty], 177 N.J. at 116 (stating that a dispute between a "fit custodial parent and the child's grandparent is not a contest between equals[,]" consequently "the best interest standard, which is the tiebreaker between fit parents, is inapplicable"). . . . The harm to the grandchild must be "a particular identifiable harm, specific to the child." Mizrahi v. Cannon, 375 N.J. Super. 221, 234 (App. Div. 2005). It "generally rests on the existence of an unusually close relationship between the grandparent and the child, or on traumatic circumstances such as a parent's death." [Daniels, 381 N.J. Super. at 294]. By contrast, missed opportunities for creating "happy memories" do not suffice. Mizrahi, 375 N.J. Super. at 234. Only after the grandparent vaults the proof-of-harm threshold will the court apply a best-interests analysis to resolve disputes over visitation details. Moriarty, 177 N.J. at 117.
>
> [Slawinski, 448 N.J. Super. at 34 (third alteration in original) (emphases added).]

Accordingly, if a grandparent meets the threshold showing of harm, the best interest standard applies and a trial court should consider the statutory factors under N.J.S.A. 9:2-7.1(b) to determine whether permitting visitation

14                                                      A-1473-20

would be in the child's best interest.[8] <u>Moriarty</u>, 177 N.J. at 117. But "the trial

court should not hesitate to dismiss an action without conducting a full trial if

---

[8] Those statutory factors include:

> (1) The relationship between the child and the applicant;
>
> (2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;
>
> (3) The time which has elapsed since the child last had contact with the applicant;
>
> (4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
>
> (5) If the parents are divorced or separated, the time[-] sharing arrangement which exists between the parents with regard to the child;
>
> (6) The good faith of the applicant in filing the application;
>
> (7) Any history of physical, emotional[,] or sexual abuse or neglect by the applicant; and
>
> (8) Any other factor relevant to the best interests of the child.

15

the grandparents cannot sustain their burden to make the required showing of harm." Major, 224 N.J. at 25. As we have cautioned, "[t]he process of discovery can impose expense, inconvenience and trauma" and therefore "[a]bsent special circumstances, parents who decide to limit or even preclude grandparent visitation should not be faced with court-ordered psychological examinations and other intrusive measures at the grandparents' behest." Daniels, 381 N.J. Super. at 297.

Guided by these standards, we disagree with Matt's contentions Judge Degnan: (1) mistakenly failed to characterize this matter as complex; (2) deprived Matt of due process; or (3) erred in denying him grandparent visitation. In fact, the record before us demonstrates Judge Degnan afforded Matt ample opportunity to prove the matter was complex in nature and to establish a threshold showing of harm. Here, the judge initially denied Dana's motion to dismiss. Thereafter, he conducted a full testimonial hearing to consider Matt's allegations his grandsons would suffer harm if visits were terminated. But the judge credited Dana's testimony over that of Matt, concluded Matt failed to demonstrate why this case was so exceptional that it could not be heard in a summary manner, and found Matt failed to make the requisite preliminary showing of harm flowing from a termination of grandparent visitation. Under

16                                                                                                    A-1473-20

these circumstances, we perceive no reason to second-guess Judge Degnan's ultimate determination this case warranted dismissal.

To the extent we have not addressed any of Matt's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-1473-20